

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-15-2001

# Keller v. Larkins

Precedential or Non-Precedential:

Docket 00-1130

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Keller v. Larkins" (2001). *2001 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 15, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1130

KERBY KEANE KELLER,

     Appellant

v.

DAVID LARKINS, SUPERINTENDENT, SCI DALLAS;
THE DISTRICT ATTORNEY OF THE COUNTY OF
LANCASTER; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA
[MIKE FISHER]

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(Dist. Court No. 99-cv-2791)
District Court Judge: Hon. Marvin Katz

Argued August 2, 2000

Before: ALITO, ROTH, and AMBRO, Cir cuit Judges.

(Opinion Filed: May 15, 2001)

       Carmen C. Nasuti (Argued)
       Susan J. Bruno
       Nasuti & Miller
       The Bourse Building, Suite 860
       111 S. Independence Mall East
       Philadelphia, PA 19106

       Attorneys for Appellant

Donald R. Totaro, District Attorney
K. Kenneth Brown, II, Assistant
 District Attorney (Argued)
Office of the District Attorney
Lancaster County Courthouse
50 North Duke Street
Lancaster, PA 17602

 Attorneys for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Kerby Keller, a Pennsylvania prisoner serving a life sentence for the first-degree murder of his wife, appeals the denial of his federal habeas corpus petition. He ar gues that his federal constitutional right to due process was violated by the introduction at trial of highly pr ejudicial evidence having little probative value and that he was denied the effective assistance of counsel because his trial attorney did not adequately prepare for or respond to testimony by the prosecution's psychiatric expert, who stated that Keller might have suffered from a condition called "sadistic personality disorder." We hold that Keller did not fairly present his federal due process claim to the Pennsylvania courts and that this claim is now barred by pr ocedural default. We reject Keller's inef fective assistance of counsel claim because he has not shown that the Pennsylvania courts' application of the prejudice pr ong of the Strickland v. Washington, 466 U.S. 668 (1984), standard for judging ineffective assistance of counsel claims was "unreasonable." See 28 U.S.C. S 2254 (d)(1). We therefore affirm.

I.

Keller was once a member of a motorcycle gang called the Pagans, and his wife, Barbara, was a nude dancer . When they married in 1981, Keller purportedly renounced his association with the Pagans, Barbara abandoned her career as a dancer, and the couple moved to a far m in Lancaster County, Pennsylvania. In 1989, Barbara announced that

2

she was leaving Keller and their son and moving in with her parents in Pittsburgh. Keller subsequently learned that Barbara did not go to Pittsburgh, and he enlisted a private investigator to locate her.

On June 20, 1989, Barbara telephoned Keller and revealed that she was living with Gary Reiter , a friend who resided down the lane from the Keller far m. Later that day, when Barbara returned to the farm, Keller shot and killed her. He then telephoned Reiter and asked that he come to the farm. When Reiter arrived, Keller ran out of the house firing a rifle at Reiter's truck. Bullets hit the truck, but Reiter was able to drive away unharmed. Keller returned to the house and telephoned friends and family members to tell them what he had done. He wrote what appeared to be a suicide note, but he did not attempt to kill himself and instead surrendered to the police.

The prosecution argued that Keller had pr emeditated his wife's murder, and the prosecution attempted to prove that Keller's motive might have been his discovery that Barbara had been providing information about the Pagans to the Federal Bureau of Investigation. The pr osecution theorized that Keller lured Barbara to the house and tied her up on the second floor but that she broke fr ee and was running away from the house when Keller shot and killed her. The prosecution introduced evidence of her work for the FBI, as well as evidence that during Keller's telephone conversations following the shooting, he had connected the killing with pressure resulting fr om the FBI investigation. In addition, Keller' suicide note stated: "Lots of stress. All the harassment. Unfounded investigation by the FBI, Crime Commission, etc." The prosecution's theory that Keller killed his wife because she was informing on the Pagans provided a basis for introducing evidence regarding Keller's association with the gang and its activities.1

The defense presented the following, dif ferent version of the events. When Barbara arrived at the farm, Keller urged her to return to him. Barbara said that she intended to

_____

1. As the District Court noted, however, defense counsel also brought out information about the Pagans. See Keller v. Larkins, 89 F. Supp. 2d 593, 600–01 (E.D. PA. 2000).

resume exotic dancing and threw at Keller a stack of photos depicting her dancing. The argument became physical, and Barbara locked herself in a bedroom upstairs. Keller broke down the bedroom door and found that Barbara had climbed out the window and was fleeing. Keller grabbed his gun and shot and killed his wife.

At trial, Keller's defense was based on insanity or the inability to form the intent needed for murder. The defense psychiatric expert, Dr. Abram M. Hostetter, diagnosed Keller as suffering from a major depressive disorder. Dr. Hostetter testified that in his opinion Keller satisfied all of the nine criteria for such a diagnosis listed in the third revised edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (3d ed. rev. 1987) (DSM-III-R), a standard reference work that lists and describes mental disorders. Dr. Hostetter opined that Keller's major depression had reached psychotic proportions at the time of the killing, that Keller "did not fully understand the nature and quality of his acts at that moment," and that he had not planned to kill his wife. App. 405, 407. Other witnesses testified to Keller's increasingly distraught behavior over his wife's infidelity.

To rebut Dr. Hostetter, the Commonwealth called its own psychiatric expert, Dr. Kurtis Jens. Dr. Jens had not examined Keller, but based on information provided to him about Keller and his behavior during the time leading up to the killing, Dr. Jens expressed the opinion that Keller did not suffer from a major depressive order. 3/14/1990 Trial Tr. at 933-41. Dr. Jens stated that the symptoms noted by Dr. Hostetter were often exhibited for a limited period of time by people suffering from "any severe distress," and he stated that Dr. Hostetter had not noted any psychotic symptoms. App. 433, 438. He expressed the opinion that Keller was capable of knowing right from wrong and forming a specific intent to kill. Id. at 443-44. In addition, in response to a lengthy hypothetical question posed by the Assistant District Attorney, Dr. Jens opined that Keller might suffer from either of two personality disorders, "antisocial personality disorder" or "sadistic personality disorder." Id. at 441. Consistent with this latter possible diagnosis, the Commonwealth put on evidence of prior

4

sadistic acts by Keller, including testimony that he had tied up and brutally beaten a woman with whom he was having an extramarital affair and testimony that he had severely beaten a man who had asked Barbara to dance in a bar .

In March 1990, Keller was convicted by a jury in the Lancaster County Court of Common Pleas of mur der in the first degree and attempted murder in thefirst degree. He was sentenced to a term of imprisonment for life and a consecutive term of five to ten years in prison. The Superior Court of Pennsylvania affirmed the judgment, and the Supreme Court of Pennsylvania denied Keller's petition for allowance of appeal. Keller then filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. SS 9541 et seq. (W est 1998). After an evidentiary hearing, the trial judge denied Keller's petition. The Superior Court affirmed, and the Pennsylvania Supreme Court declined review.

Keller next filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. S 2254 with the United States District Court for the Eastern District of Pennsylvania. Keller argued, among other things, that the admission of highly prejudicial evidence regarding the Pagans and his wife's work as an informant had deprived him of due process as guaranteed by the federal Constitution and that his counsel was ineffective in dealing with Dr . Jens's testimony.

The Magistrate Judge to whom Keller's petition was referred recommended that it be denied. She concluded that in the state court proceedings Keller had challenged the admission of the evidence concerning the Pagans on state-law grounds only and that his federal constitutional claim regarding that evidence was barr ed by procedural default. She also held that the state courts' conclusion that Keller's trial counsel was not ineffective under the Strickland standard was not vulnerable to attack pursuant to 28 U.S.C. S 2254(d)(1).

The District Court followed the Magistrate Judge's recommendation, although it did not agr ee with some of her reasoning. Keller v. Larkins, 89 F . Supp. 2d 593 (E.D. Pa. 2000). The District Court concluded that Keller had fairly

5

presented his due process claim in the state court proceeding because he had contended that the admission of the evidence in question had deprived him of a "fair trial." Id. at 597–98. The District Court held, however , that the admission of this evidence did not rise to the level of constitutional error. Id. at 599–606. With respect to Keller's ineffective assistance claim, the District Court held that trial counsel had not provided adequate r epresentation in connection with Dr. Jens's testimony but that Keller had failed to demonstrate prejudice arising fr om trial counsel's performance. Id. at 606–11. Accordingly, the District Court denied the habeas petition but granted a certificate of appealability. Id. at 612.

II.

The first claim on appeal is that the admission of evidence of Keller's association with the Pagans and Barbara's role as an FBI informant deprived Keller of due process under the federal Constitution. Keller contends that the Commonwealth lacked proof of Keller's knowledge that his wife was an informant and that, accor dingly, evidence regarding his association with the Pagans was not probative but was highly prejudicial. As is requir ed in order to show that an evidentiary error of this type r ose to the level of a due process violation, Keller contends that it was of such magnitude as to undermine the fundamental fair ness of the entire trial. McCandless v. Vaughn , 172 F.3d 255, 262 (3d Cir. 1999); Lesko v. Owens, 881 F .2d 44, 51–52 (3d Cir. 1989). In response to Keller's argument, the Commonwealth contends, first, that the Magistrate Judge was correct in holding that Keller's due process claim is barr ed by procedural default and, second, that the District Court was correct in rejecting the claim on the merits.

We agree with the Commonwealth that Keller's federal due process claim is barred by procedural default. In the absence of an explicit waiver by the state, a federal court is permitted under 28 U.S.C. S 2254(b)(1)(A) to grant a state prisoner's petition for a writ of habeas corpus only if the petitioner has exhausted available state-court r emedies. A petitioner has not exhausted such remedies if he has the right under state law to raise his claim by any available

procedure. 28 U.S.C. S 2254(c). T o satisfy the exhaustion
requirement, a federal habeas claim must have been "fairly
presented" to the state courts. Picar d v. Connor, 404 U.S.
270, 275 (1971). This means that a petitioner must
"present a federal claim's factual and legal substance to the
state courts in a manner that puts them on notice that a
federal claim is being asserted." McCandless , 172 F.3d at
261. "It is not sufficient that all the facts necessary to
support the federal claim were before the state courts,"
Anderson v. Harless, 459 U.S. 4, 6 (1982), and"mere
similarity of claims is insufficient to exhaust." Duncan v.
Henry, 513 U.S. 364, 366 (1995).

Here, there is no doubt that Keller challenged the
admission of the evidence relating to the Pagans and
Barbara's work as an informant in the state court
proceedings, but Keller did not give the state courts "fair
notice" that he was asserting a federal constitutional claim
rather than a claim that the trial court violated state rules
of evidence. On direct appeal, Keller's Superior Court brief
devoted more than eight pages to this issue. See Brief for
Appellant at 31-40, Commonwealth v. Keller, No. 3992
Phila. 1992 (Pa. Super. Ct. July 28, 1993). Citing numerous
state cases based on state law, the brief cogently argued
that the admission of the evidence in question violated the
governing Pennsylvania standards r egarding proof of
uncharged bad acts and that the evidence should have
been excluded on the ground that its pr ejudicial impact
outweighed its probative value. Neither the federal
Constitution nor any judicial decision based on the federal
Constitution was mentioned. Keller's petition for allowance
of appeal to the Supreme Court of Pennsylvania was
similar. See Petition for Allowance of Appeal at 21-28,
Commonwealth v. Keller, No. 369 M.D. Allocatur 1993 (Pa.
Nov. 29, 1993). Neither the Superior Court brief nor the
petition fairly presented a federal constitutional claim. The
Superior Court, the highest state court to entertain Keller's
claim on the merits, understood it to be based on state law,
and this reading was entirely reasonable.

In arguing that he fairly presented a federal
constitutional claim to the Pennsylvania courts, Keller relies
entirely on passing references to the concept of a "fair trial"

7

in his state court papers. His brief in the Superior Court contained one sentence referring to this concept, as did his petition for allowance of appeal. Keller maintains these references were enough to give the state courts notice that he was raising not just ordinary state-law evidentiary issues, but a federal due process claim.

Keller's argument is reminiscent of one r ejected by the Supreme Court in Duncan v. Henry, supra. There, the habeas petitioner, Henry, challenged the admission of evidence in state court on state-law grounds, arguing that the evidence was "irrelevant and inflammatory" and resulted in a "miscarriage of justice." Id. at 365. The Ninth Circuit held that Henry's claim was essentially the same as a claim that he had been denied "the fundamental fairness" guaranteed by the federal due process guarantee. See Henry v. Estelle, 33 F.3d 1037, 1041 (9th Cir. 1994). The Supreme Court, however, held that Henry's argument in state court was insufficient to give the state courts fair notice that he was asserting a federal constitutional claim. The Court wrote:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 366. The Court observed that the state court "understandably confined its analysis to the application of state law." Id. Concurring in the judgment, Justice Souter, joined by two other Justices, wrote that Henry's " `miscarriage of justice' claim in state court was reasonably understood to raise a state-law issue of prejudice, not a federal issue of due pr ocess." Id. at 366-67 (Souter, J., concurring in the judgment). Thus, the Court held that asserting that an evidentiary error produced a "miscarriage of justice" was not sufficient to put the state courts on notice that Henry was arguing that the error violated federal due process requir ements.

8

In the face of Duncan v. Henry, supra , we cannot hold that Keller fairly presented a federal due pr ocess claim to the state courts. Keller, like Henry, did not invoke the federal due process guarantee in the state courts. Henry claimed that admission of the evidence produced a "miscarriage of justice"; Keller argues that the admission of evidence denied him a "fair trial." Since the Supreme Court found the former language insufficient to give fair notice of a federal due process claim, we are hesitant to attach greater significance to the passing r eference to the concept of a "fair trial" on which Keller's ar gument rests. Here, as in Duncan v. Henry, we believe that the Superior Court "understandably confined its analysis to the application of state law," Duncan, 513 U.S. at 366, and"reasonably understood" Keller "to raise a state-law issue" only. Id. at 367 (Souter, J., concurring in the judgment).

Our decision in McCandless supports this conclusion. In that case, the prosecution was permitted to put on evidence that its cooperation agreement with its key witness was conditioned upon corroboration of the witness's assistance. In state court, the habeas petitioner challenged the admission of this evidence on state-law grounds, "contending that the cooperation agreement testimony was `irrelevant' and `prejudicial' and therefore improperly admitted." 172 F.3d at 262. We concluded that the petitioner had not fairly presented his federal constitutional claim to the state courts, and we view Keller's state court arguments here as analogous to those that we found inadequate in McCandless.

To be sure, we did note at one point in the McCandless opinion that the petitioner's state court papers never mentioned "the terms `constitution',`due process' or even `fair trial.' " Id. (emphasis added). We certainly did not hold, however, that a passing reference to the concept of a "fair trial" would have been enough to alter our decision, and such a conclusion, we think, would have been inconsistent with the plain thrust of Duncan v. Henry, supra, on which McCandless squarely relied. See id. We thus hold that Keller's current federal due process claim was not fairly presented to the Pennsylvania courts.

9

If Keller could still present his federal claim to the state courts at this late date, we would be compelled to dismiss his petition, but it is undisputed that the Pennsylvania courts would not entertain that claim. As the Magistrate Judge noted, Keller is barred from seeking further relief in state court because the statute of limitations forfiling another PCRA petition has expired. See Pa. Cons. Stat. Ann. S 9545(b)(1) (West 1998). As a r esult, his federal due process claim is now procedurally defaulted. See McCandless, 172 F.3d at 260. Federal courts may not consider procedurally defaulted claims unless"the prisoner can demonstrate cause for the default and actual pr ejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements. Id. at 753. To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, McCleskey v. Zant, 499 U.S. 467, 494 (1991), by presenting new evidence of innocence. Schlup v. Delo, 513 U.S. 298, 316 (1995). Keller does not allege cause or pr ejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, Keller's federal due process claim is foreclosed from habeas review.2

_____

2. If we were free to reach the merits of this claim, we would hold, for essentially the reasons given by the District Court, that Keller's due process rights were not violated. See Keller, 89 F. Supp. 2d at 604–606. Under ordinary principles of evidence law, the propriety of admitting this evidence is questionable because there was no direct evidence and only weak circumstantial evidence that Keller knew that his wife was an informant. There was evidence that Keller knew that the FBI was conducting an investigation, and there was evidence linking the stress resulting from that knowledge with the events on the day of the killing. However, neither Keller's wife, nor Reiter , nor the FBI agent who testified
thought that Keller was aware of her work as an informant, and Keller apparently never gave any indication that he possessed such knowledge, even during his telephone conversations just after the shooting when he mentioned the FBI investigation. Nor did he pr ovide any such indication

10

III.

The second claim on appeal, which Keller properly raised in the state courts, is that he was denied the effective assistance of counsel because his trial attorney did not adequately prepare for and respond to the testimony of the prosecution's psychiatric expert, Dr. Kurtis Jens. As noted, Dr. Jens stated, among other things, that Keller may have had "sadistic personality disorder," and the Commonwealth put on evidence of Keller's prior sadistic acts.

Defense counsel did not attempt to discover the nature of Dr. Jens's testimony before trial and did not seek to bar the admission of Dr. Jens's testimony about "sadistic personality disorder."[3] However, defense counsel did conduct a lengthy and skillful cross-examination regarding the other aspects of Dr. Jens's testimony. App. 444-73. In particular, counsel focused on the fact that Dr. Jens had made his diagnosis without ever speaking with Keller, and defense counsel elicited Dr. Jens's agreement that Keller appeared to possess all of the symptoms of major depression as set forth in the DSM-III-R. Id. at 445-47, 449-52, 457-58. Dr. Jens stated, however, that in order to make a diagnosis of major depression, a psychiatrist would have to make a professional assessment as to whether the subject possessed each of those symptoms to the requisite degree. Id. at 451-52. Defense counsel did not dwell on the subject of "sadistic personality disorder," but he did elicit Dr. Jens's agreement that a patient could have both a major depressive disorder (Dr. Hostetter's diagnosis) and "sadistic personality disorder." Id. at 467-68.

_____

in his supposed suicide note. A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence. A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation, and, like the District Court, we do not believe that it did here.

3. The DSM-III-R states that "[t]he essential feature of this disorder is a pervasive pattern of cruel, demeaning, and aggressive behavior directed toward other people, beginning by early adulthood. The sadistic behavior is often evident both in social relationships (particularly with family members) and at work (with subordinates). . . ." DSM-III-R at 369.

11

In his PCRA petition, Keller maintained that his trial counsel was ineffective because he did not challenge the validity of the concept of "sadistic personality disorder," which, he argued, was not scientifically r eliable and was not generally accepted in the field of psychiatry. At a hearing before the judge who had tried the case, Keller presented the testimony of an expert, Susan Feister, M.D., a clinical psychiatrist, who pointed out that "sadistic personality disorder" was not included in the main body of the DSM–III–R, the most recent version of the Diagnostic Statistical Manual at the time of Keller's trial, but instead appeared in an appendix for proposed diagnostic categories needing further study. See DSM–III–R at xxv–xxvi, 369–70. Dr. Feister testified that "[sadistic personality disorder] was not an accepted official diagnosis" at that time. She added that "sadistic personality disorder" was not included in the more recent DSM–IV and that she thought that it was unlikely ever to be included as an official diagnosis.

The trial judge rejected Keller's ineffective assistance claim. The judge noted that although "sadistic personality disorder" was not included in the main body of the DSM–III–R, it was included in the appendix and had thus "been accepted as a classification, albeit one under going scrutiny." Commonwealth v. Keller, No. 1731-1989, slip op. at 8 (Pa. Ct. Comm. Pl. Oct. 21, 1996), r eprinted in App. at 63. The judge added:

> We take judicial notice of the fact that defendant's own psychiatric expert, Susan Feister, M.D., who criticized Dr. Jens's use of the [sadistic personality disorder] diagnosis, concluded as follows in a book chapter dated the same year as the trial:
>
> Thus, data available to date, while not extensive, suggest that sadistic personality disorder , as described in the DSM–III–R describes a personality pattern with remarkably high inter nal consistency and descriptive validity.

Id. (quoting M. Gay & S. Feister, Sadistic Personality Disorder, in Psychiatry (R. Michels ed., 1990)). The judge also observed that "Dr. Feister would have relied on this textbook to make a diagnosis" and that Keller had not been

12

"prejudiced by use of an improper diagnostic term." Id. at 8-9, reprinted in App. at 63-64.

On appeal, the Superior Court affirmed the trial judge's holding. The Superior Court wrote that the PCRA court had found that "sadistic personality disorder was generally accepted as a psychiatric diagnosis at the time of trial" and sustained that finding. Commonwealth v. Keller , No. 4137 Phila. 1996, slip op. at 10 (Pa. Super. Ct. June 19, 1997), reprinted in App. at 84. Thus, both the trial judge and the Superior Court have held that the Strickland standard for ineffective assistance of counsel claims has not been met.

Our review of the state courts' decisions is delineated in 28 U.S.C. S 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C.S 2254(d) precludes federal habeas corpus relief unless the state courts' adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court pr oceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), a majority of the Justices accepted the following interpretation of subsection (1):

> [T]he writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)"involved an unreasonable application of . . . . clearly established Federal law, as determined by the Supr eme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that r eached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

> "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the
> correct governing legal principle fr om this Court's
> decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. A federal habeas court may
not grant relief under the "unreasonable application" clause
unless a state court's application of clearly established
federal law was objectively unreasonable; an incorrect
application of federal law alone does not warrant r elief. Id.
at 411.

Our court's prior interpretation of 28 U.S.C.S 2254(d) in
Matteo v. Superintendent, SCI Albion, 171 F .3d 877, 891 (3d
Cir. 1999)(en banc), is consistent with the Supreme Court's
decision in Williams. See Werts v. Vaughn, 228 F.3d 178,
197 (3d Cir. 2000). As we put it in Matteo, the federal
habeas court must identify the applicable Supr eme Court
precedent and then

> must determine whether the state court decision was
> "contrary to" Supreme Court precedent that governs
> the petitioner's claim. Relief is appropriate only if the
> petitioner shows that Supreme Court precedent
> requires an outcome contrary to that r eached by the
> relevant state court. In the absence of such a showing,
> the federal habeas court must ask whether the state
> court decision represents an "unr easonable application
> of " Supreme Court precedent: that is, whether the
> state court decision, evaluated objectively and on the
> merits, resulted in an outcome that cannot r easonably
> be justified. If so, then the petition should be granted.

Matteo, 171 F.3d at 891 (inter nal quotations omitted).

Here, the "clearly established Federal law, as determined
by the Supreme Court of the United States," 28 U.S.C.
S 2254(d)(1), is the standard for inef fective assistance of
counsel enunciated in Strickland. See W illiams, 529 U.S. at
391. Under Strickland, a defendant seeking to establish a
Sixth Amendment violation must show that counsel's
performance fell below an objective standard of
reasonableness, as evaluated in light of the facts of the case
at the time of counsel's conduct. Strickland, 466 U.S. at

14

688–89. A defendant also must show that counsel's deficient performance actually pr ejudiced his defense. Id. at 687. A defendant is prejudiced if "ther e is a reasonable probability that, but for counsel's unpr ofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must consider the effect of any errors in light of the totality of the evidence. Id. at 695–96. A defendant must demonstrate both deficient per formance and resulting prejudice in order to state an ineffective assistance claim. Id. at 697. Because Strickland does not unequivocally mandate a particular outcome in this case, we proceed under the "unreasonable application" prong of 28 U.S.C. S 2254(d)(1).

We need not address the first pr ong of the Strickland test under S 2254(d) because we agree with the District Court that the state courts' rejection of Keller's claim did not involve an unreasonable application of the second prong of that test under S 2254(d)(1).

Keller argues that his trial attorney should have attempted to prevent the admission of Dr . Jens's testimony about "sadistic personality disorder" on the ground that it was scientifically unreliable and not generally accepted in the field of psychiatry. Keller contends that this testimony failed to meet the standard set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), for the admission of expert testimony at a federal trial. This case, however, is not a direct appeal fr om a federal trial in which counsel objected to the admission of expert testimony under Fed. R. Evid. 702. Keller was tried in state court, and the admission of expert testimony in a state trial presents a question of state law4 -- unless, of course, the evidence violates due process or some other federal constitutional right, and Keller makes no such argument. In this case,

_____

4. The Supreme Court of Pennsylvania has not decided whether to adopt the Daubert test or retain the "Frye" test, see Frye v. United States,293 F. 1013 (D.C. Cir. 1923), which it endorsed in Commonwealth v. Topa, 369 A.2d 1277 (Pa. 1977). See Blum v. Merr ell Dow Pharmaceuticals, Inc., 764 A.2d 1 (Pa. 2000).

both the PCRA judge, who presided over Keller's trial, and the Superior Court held that Dr. Jens's testimony was proper, and we must therefor e proceed on the assumption that this testimony would have been admitted at trial even if defense counsel had objected. Consequently, it is apparent that Keller was not prejudiced by trial counsel's failure to object.

Keller also contends that trial counsel was inef fective because he was not prepared to cross-examine Dr. Jens about "sadistic personality disorder" and did not do so adequately. As noted, however, under S 2254(d) we must decide whether a determination of no pr ejudice involves an unreasonable application of Strickland. A full presentation relating to the status of "sadistic personality disorder" at the time of Keller's trial would have brought the following facts to the jury's attention. The "Work Group" appointed to revise the DSM-III had recommended that "sadistic personality disorder" and two other categories be included in the main body of the DSM-III-R, but these recommendations met with "strenuous objections." DSM-III-R at xxv. "The advisory committees that had worked on the definitions of these disorders and the W ork Group believed that there was sufficient resear ch and clinical evidence regarding the validity of each of these categories to justify its inclusion in the revised manual," but "critics of each of these categories believed that not only was adequate evidence of the validity of these categories lacking" but that they "had a high potential for misuse." Id . at xxv-xxvi. "This controversy was resolved by the inclusion of these three categories in [an appendix] to facilitate further systematic clinical study and research." Id . at xxvi. Thus, a full presentation would have informed the jury that mental health researchers and clinicians disagr eed about the validity of "sadistic personality disorder" as a diagnostic category. Bringing out this disagreement might have diminished the force of Dr. Jens's testimony regarding "sadistic personality disorder" to some degree, but it would not by any means have entirely discredited it. See Keller, 89 F. Supp. 2d at 611 ("full cross-examination on the subject would only have revealed that the diagnosis was of a proposed psychiatric category, not that it was an inadmissible or improper consideration"). Moreover,

16

weakening the effect of Dr. Jens's testimony on this point would have had little logical bearing on the more critical parts of his testimony, namely, his conclusion that Keller did not suffer from a major depressive disorder, did not experience a psychotic episode at the time of the killing, and was able to understand right and wrong and to form a specific intent to kill. Dr. Jens's testimony on these points, which were central to Keller's defenses of insanity and diminished capacity, were not at all dependent on Dr. Jens's conclusion that Keller may have suffered from "sadistic personality disorder." See id. In light of all this, it is not unreasonable to conclude that Keller was not prejudiced in the sense relevant here, i.e., that there is not a reasonable probability that the jury, if aware of the disagreement among mental health experts about "sadistic personality disorder," would have found either that Keller was insane or incapable of forming the intent required for first-degree murder. Keller's ineffective assistance of counsel claim must therefore be rejected.

IV.

For the reasons explained above, we affirm.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17