**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1797
_____

SOLOMAN COLLINS,
Appellant

v.

WARDEN JAMES T VAUGHN CORRECTIONAL CENTER; ATTORNEY
GENERAL OF THE STATE OF DELAWARE
_____

On Appeal from the United States District Court
for the District of Delaware
(No. 1-16-cv-00751)
U.S. District Judge: Hon. Gregory B. Williams
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 30, 2024
_____

Before:  SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed: October 1, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Soloman Collins appeals the District Court's order denying his petition for a writ of habeas corpus, claiming that the lead detective provided false trial testimony. Because the jury would have reached the same verdict irrespective of this testimony, we will affirm.

## I

## A

Collins was sentenced to life in prison following his convictions for first degree murder, two counts of possession of a firearm during the commission of a felony, and three counts of first degree reckless endangering, all in connection with the 2009 shooting death of Tommear Tinnin.

On the afternoon of October 8, 2009, Tinnin and three of his family members were sitting in a car parked near a mobile food bank. Tinnin was shot as he shielded a child in the back seat. Two individuals were observed fleeing the scene. One eyewitness, Dionne Dupree, testified that the shooter was a (1) 160-pound "dark brown-skinned male, [with a] short afro[,]" (2) carrying a gun, (3) wearing "a brown jacket with white writing and blue jeans[,]" and (4) running ahead of a "shorter male with a white shirt[.]"[1] App. 149-50.

---

[1] There was testimony that Collins was six feet tall and 160 pounds, and that the individual allegedly with him was five feet five inches tall and 150 pounds. One eyewitness made out-of-court statements identifying the shooter as approximately five-foot seven, but not over six feet tall, but that eyewitness recanted all of her prior statements at trial.

Two days after the shooting, another eyewitness, Violet Gibson, was shown a photo array and identified Collins as the shooter during an audio-recorded interview conducted by Detective Patrick Conner. At trial, Gibson testified that she (1) only spoke to Det. Conner because he promised that she would not need to testify, (2) may not have been truthful when she spoke to Det. Conner, (3) could not identify anyone, and (4) did not "know" anything.[2]

Eyewitness Shakeira Romeo also testified.[3] She acknowledged that she (1) lived in the vicinity of the shooting; (2) recognized two individuals in a video taken around the time of the shooting but said neither individual was Collins; (3) was interviewed by Det. Conner;[4] (4) had recognized all of the men depicted in the photo array that he showed her, but claimed she could not otherwise recall what transpired during the interview; (5) heard—but did not see—shots fired; and (6) saw only one of the two individuals involved in the shooting but that person was not Collins.

The prosecution then called Det. Conner pursuant to 11 Del. Code § 3507, which permitted the state to offer Det. Conner's testimony about Romeo's out-of-court statements as affirmative evidence.[5] Det. Conner testified that four days after the

---

[2] Based on Gibson's equivocations and reluctance to recall information or answer questions, the trial court permitted the prosecution to treat her as a hostile witness.

[3] Romeo failed to comply with her subpoena and testified only after her arrest on a material witness warrant.

[4] This interview was not recorded.

[5] Collins's counsel conceded that Romeo's statement to Det. Conner was voluntary but objected to the § 3507 testimony on the grounds that Romeo's prior statement was not taped and there was no foundation for Romeo to have seen the shooter. The trial court questioned how Det. Conner could testify to Romeo's exact statement absent a recording. Det. Conner testified that (1) he had notes that he took during the ten-

shooting, Romeo told him that one of the two people running from the scene wore "[a] brown-hooded sweatshirt with white letters" and that the individual in the sweatshirt was taller than the other person. App. 187. Det. Conner then identified State Exhibit 84 as the six-photograph array that he showed Romeo,[6] and testified that Romeo identified one individual as someone she had seen at a club, another individual as someone who lived in her building, and a third individual, Collins, as the shooter. Exhibit 84 also had some handwritten words, including the word "shooter" next to Collins's photograph.

Romeo retook the witness stand and testified that (1) while she remembered identifying two photographs from the array, she did not remember identifying any of them as the shooter, which she claimed she was sure she would recall, and (2) she had no recollection of identifying the shooter as wearing a brown sweatshirt or of what the individuals running from the scene looked like or were wearing. Det. Conner was then recalled to the stand and testified that a day after he first interviewed Romeo, he showed her a copy of the same photo array, but she said that she did not recognize anyone.

Another eyewitness, Sharon Stallings, testified that she heard gunshots, saw two "dark and tall" men running towards and entering a burgundy Nissan Maxima sedan, and

---

minute unrecorded interview; (2) the notes were a summary and not verbatim, and he did not recall Romeo's exact words; (3) Det. Lenhardt was also present for the interview but did not take notes; (4) Exhibit 84 was a photo array that included Collins's photograph; (5) he showed Exhibit 84 to Romeo on a park bench; and (6) Exhibit 84 includes handwritten words that reflected Romeo's statements to him. The trial court then permitted Det. Conner to testify about Romeo's specific statements because "his notes support some specific answers," but the court noted that it would "not allow anything that's an interpretation" of what Romeo said. App. 185.

[6] Detective Conner was able to identify Exhibit 84 as the copy of the photo array presented to Romeo because he wrote her name on the back of the page.

that it appeared that the passenger of the vehicle possessed a gun. App. 196. Another eyewitness, Omar Chatt, likewise testified that he heard the gunshots, observed two men fleeing into a burgundy Maxima, one of whom appeared to try and hold something in his pants to prevent the object from falling while running to the car. Det. Conner was recalled to the stand and testified under § 3507 that Chatt had also previously reported that an individual in a brown-hooded sweatshirt entered the passenger side of the vehicle. Another detective also testified as a § 3507 witness that Chatt provided him with the vehicle's Delaware license plate number.

The jury heard testimony from these witnesses, among others, and further learned that: (1) the police located the vehicle and found a brown sweatshirt on the rear passenger floor; (2) gunshot residue and DNA were found on the brown sweatshirt, with some of the DNA matching Collins; (3) Collins's DNA was also located on the rear exterior driver-side door handle of the Maxima; and (4) various items bearing Collins's name were also located in the vehicle.

During the third day of deliberations, the jury reported that it was deadlocked and the court gave the jury an Allen charge.[7] Two hours later, the jury returned guilty verdicts on all counts.

B

The Supreme Court of Delaware affirmed the verdict on direct appeal. See Collins v. State, 56 A.3d 1012 (Del. 2012). Collins sought post-conviction relief, which the

---

[7] See Allen v. United States, 164 U.S. 492 (1896).

5

Superior Court denied. State v. Collins, 2015 WL 412924 (Del. Super. Ct. Jan. 30, 2015). Collins appealed to the Delaware Supreme Court, but upon request of the parties, the court remanded the case to the superior court for an evidentiary hearing based upon the prosecutor's disclosure that the word "shooter" was handwritten on the photo array presented at trial (Exhibit 84), but that word did not appear on the copy produced in discovery. At trial, Det. Conner testified that he wrote notes on the photo array as he interviewed Romeo, and the trial court permitted Det. Conner's § 3507 testimony about Romeo's statements based in part on the court's belief that Det. Conner wrote the notes on the photo array while interviewing Romeo.

At the evidentiary hearing, Det. Conner initially testified that (1) he took notes while interviewing Romeo; (2) he wrote those notes on both his legal pad and Exhibit 84; (3) "shooter," "tall," and "first person" were all words that Romeo specifically said to him and that he transcribed on the photo array;[8] (4) he knew Exhibit 84 was the one he showed to Romeo because he provided each witness with a different copy and wrote their name on the back; (5) he did not subsequently add any writing to the photo array; (6) his

---

[8] Specifically, the State engaged in the following colloquy with Det. Conner:
Q. Do you have a present recollection of when you wrote all of these words?
A. When I interviewed the witness.

Q. Okay. Do you believe that you wrote the word "shooter" when you interviewed the witness?
A. Yes.

Q. Okay. Is it possible that you wrote any of these words later?
A. I believe I wrote it the date of the interview.
App. 831-32.

6

notes on the legal pad reflect that Romeo "ID'ed" Collins, but those notes and the police report were summaries of his recollection and not verbatim; and (7) his notes otherwise reflect that Romeo heard nine to ten gunshots, claimed the shooter was the taller of the two individuals fleeing the scene and was wearing a brown hooded sweatshirt with white letters, and she identified Collins as the shooter in the photo array. On cross-examination, Det. Conner testified that (1) he retained custody of Exhibit 84 until he turned it over to the prosecution at some point near trial; and (2) he never concealed, deleted, or whited-out any portion of Exhibit 84. After being pressed further, however, he acknowledged that "it's possible" that in preparing for the trial he added words to the photo array, but that he did not recall ever doing so.[9] App. 836-37.

---

[9] Specifically, the following exchange between Collins's counsel and Det. Conner transpired:

> Q. Okay. Is it possible that as you're preparing the case for trial you just added [the word "shooter"] because that's what you recall she said?
> A. Being over the course of time, sitting here going over this, my gut tells me no, but, obviously, I'm thinking it over now. But I have to go with my gut.
>
> Q. Okay. Is it possible, since you don't have –
> A. I'm going to have to say it's possible.
>
> …
>
> Q. Okay. And so you – as you stand here today, looking back, you can't explain how the word "shooter" appears on the original, but does not appear on the copy of the original that you made?
> A. Do I know why it's not there?
>
> Q. Yes.
> A. All I know is I didn't delete it.

The prosecutor who presented Romeo's trial testimony testified at the hearing that (1) the discrepancy between the trial exhibit and discovery copy did not surface during trial, and (2) the word "shooter" on the photo array was "important" corroborative evidence with respect to the trial court's decision to allow Det. Conner's § 3507 testimony and that without it he was "not sure" that the prosecution's other admissibility arguments "would have carried the day." App. 840.

The Superior Court found that (1) Det. Conner added the word "shooter" to the original copy of the photo array after the discovery copy was made; but (2) he did not act in bad faith or to attempt to admit the § 3507 statement; and (3) Romeo identified Collins as the shooter during her interview with Det. Conner. The court then concluded that, even considering the discrepancy, Collins's ineffective assistance of counsel claim failed as he could not establish either prong of Strickland v. Washington, 466 U.S. 668 (1984). The Delaware Supreme Court affirmed. See Collins v. State, 138 A.3d 475 (Table), 2016 WL 2585782, at *3, *5 (Del. May 2, 2016).

Collins filed a habeas petition in federal court pursuant to 28 U.S.C. § 2254, which the District Court dismissed. See Collins v. Metzger, Civ. No. 16-751, 2022 WL 608925 (D. Del. Feb. 7, 2022). Collins moved for reconsideration, which the Court denied. See Collins v. May, Civ. No. 16-751, 2023 WL 2663089 (D. Del. Mar. 28, 2023). We

---

Q. Okay. And it's possible that you added "shooter" on the original, as you previously testified?
A. My gut says no, but I'm going to say is it a possibility? Yes. But I don't believe that's the case.
App. 836-37.

8

granted Collins a certificate of appealability regarding (1) whether Det. Conner's testimony about Romeo's identification violated due process, (2) prosecutorial misconduct as to Exhibit 84, and (3) his trial counsel's ineffectiveness for failing to (a) discover the discrepancy between Exhibit 84 and the copy of the photo array provided in discovery, and (b) move to exclude or impeach Det. Conner's testimony about the identification.

## II[10]

Because Collins's claims fail on their merits, we need not examine whether each were exhausted. See 28 U.S.C. § 2254(b)(2). However, to identify the applicable standard of review, we must determine whether the state considered those claims.[11]

---

[10] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). When a district court dismisses a habeas petition without an evidentiary hearing, we conduct plenary review of its order. Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009).

[11] Where state courts address a claim on the merits, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254. AEDPA restricts a federal court's power to grant a writ of habeas corpus when a state court has already denied the same underlying claim on the merits, unless the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1)-(2); Blystone v. Horn, 664 F.3d 397, 417 (3d Cir. 2011). Where a claim was not adjudicated on the merits in the state court proceedings, AEDPA deference does not apply, and a federal habeas court reviews legal questions and mixed questions of law and fact de novo, but presumes the state court's factual determinations are correct unless rebutted by clear and convincing evidence. Simmons, 590 F.3d at 231. Here, Collins contends that the state court's rulings were unreasonable applications of federal law. For the reasons set forth herein, the state court did not unreasonably apply federal law.

We will defer to the state courts' factual determinations that (1) Det. Conner testified falsely and wrote "shooter" after the discovery copy was made, and (2) Romeo

A

We review Collins's due process claim based on the admission of Exhibit 84 and Det. Conner's false testimony de novo because that claim was not adjudicated by the state courts. Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009). In this case, to establish a due process violation, Collins must show that the admission of Exhibit 84 and Det. Conner's false testimony "was of such magnitude as to undermine the fundamental fairness of the entire trial." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001); see also Lesko v. Owens, 881 F.2d 44, 51-52 (3d Cir. 1989) (explaining that for a trial error to be cognizable in a federal habeas proceeding, the constitutional violation must speak to the trial's "fundamental fairness" (citation omitted)).

Collins fails to make such a showing. We defer to the state court's findings that (1) Romeo identified Collins as the shooter,[12] see supra n.11, and (2) Det. Conner falsely testified that he transcribed Romeo's statement that Collins was the shooter on the photo array during her interview.

---

identified Collins as the shooter, because, under § 2254(e)(1), such determinations are presumed to be correct, and a habeas petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000). To the extent that Collins challenges the state courts' determination that Romeo identified him, he did not rebut the presumed correctness for this ruling, particularly in light of the other evidence that established that Collins was the shooter.

[12] We may not consider on habeas review Collins's objection to the admissibility of the evidence because it presents a question of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding habeas review only looks to whether "the admission of the evidence violated [defendant]'s constitutional rights" and not state law questions); Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) (holding the Due Process Clause is not a mechanism through which a federal habeas court may engage in a "review of the wisdom of state evidentiary rules").

10

The false testimony concerning when he wrote the word "shooter" on the array and Collins's counsel's inability to impeach Det. Conner on that point do not sufficiently show that the trial was fundamentally unfair based on all the other evidence. Several witnesses described an individual matching Collins's description and wearing a brown hooded sweatshirt with white lettering fleeing the scene with a firearm and into a vehicle. Police later recovered the vehicle and found the brown sweatshirt and documents with Collins's name in the car. Collins's DNA was also found in the hood and neck area of the sweatshirt, and the sweatshirt tested positive for gunshot residue. Finally, Gibson initially identified Collins as the shooter to police in a recorded statement. In light of this evidence, the "magnitude" of Det. Conner's testimony about when the word "shooter" was noted on the photo array would not "undermine the fundamental fairness of the entire trial." Keller, 251 F.3d at 413. Accordingly, Collins's due process claim based Det. Conner's testimony about Romeo's statements and Exhibit 84 fails.

B

We also review de novo Collins's due process claim based on prosecutorial misconduct arising from Det. Conner's false testimony because it also was not adjudicated by the state courts. To prevail on this claim, Collins must establish, among other things, that there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). Given the other evidence that supports concluding that Collins was the shooter, as explained above, Collins cannot show that Det. Conner's testimony could have affected the jury's judgment, and so his prosecutorial misconduct claim lacks merit.

11

## C

Collins's ineffective assistance claim based on his trial counsel's failure to notice the discrepancy on Exhibit 84 was adjudicated in state court, and therefore AEDPA deference applies.  See Collins, 138 A.3d 475 (Table), 2016 WL 2585782, at *5; supra n.11.  This claim requires a showing that his counsel's failure to object to Exhibit 84 or question Conner about the additional notation did not meet the standard for competent counsel and that "but for counsel's unprofessional errors," there is "a reasonable probability that . . . the result of the proceeding would have been different."  Preston v. Superintendent Graterford SCI, 902 F.3d 365, 382 (3d Cir. 2018) (quoting Strickland, 466 U.S. at 694).  Even assuming that his counsel was ineffective for failing to notice the discrepancy between the discovery copy and trial exhibit, the above-discussed evidence provided the jury a sufficient basis to conclude that Collins was the shooter, and thus it is unlikely that the result of the proceeding would have been different.  Therefore, his ineffective assistance of counsel claim fails.

## III

For the foregoing reasons, we will affirm.

12