NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 24-2162

———————

BRUCE MASON,
Appellant

v.

STATE OF DELAWARE; SUPERINTENDENT JAMES T. VAUGHN
CORRECTIONAL CENTER; ATTORNEY GENERAL DELAWARE

———————

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:21-cv-00864)
District Judge:  Honorable Gregory B. Williams

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 25, 2025

———————

Before:  BIBAS, PHIPPS, and AMBRO, *Circuit Judges*

(Filed: March 26, 2025)

———————

OPINION*

———————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

About twenty-five years after his conviction for statutorily raping a thirteen-year-old girl, an inmate discovered that the victim had been involuntarily committed to a mental health facility before and during the trial at which she testified against him. The inmate filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, claiming that the Government violated its duty to disclose exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), by not turning over the report discharging her from the facility. On procedural default grounds, we will affirm the District Court's denial of the petition.

### FACTUAL BACKGROUND

In February 1993, a Delaware grand jury indicted Bruce Mason on four counts of first-degree unlawful sexual intercourse, *see* Del. Code Ann. tit. 11, § 775 (1993), and one count of first-degree kidnapping, *see id.* § 783A (1993). Those charges were related to his alleged statutory rape of a minor: forcing her to engage in penetrative vaginal sex, forcing her to engage in penetrative anal sex, forcing her to perform oral sex on him, and forcibly performing oral sex on her; and unlawfully restraining her with the intent to sexually abuse her. In June 1994, the case went to trial.

The victim, R.R., provided a firsthand account at trial on June 21. She described how one summer night after seventh grade, when she was thirteen years old, Mason, who was nineteen, drove her to his apartment under the pretense of needing help feeding his dog. R.R. explained that she brought along her younger stepbrother and younger sister even though Mason objected and told her that he wanted only her to join him. She also recounted how at his apartment, she grew concerned and asked her stepbrother not to leave her alone with Mason. But, as R.R. detailed, Mason brought her into a bedroom, locked her stepbrother out, and sexually assaulted her.

Three other witnesses testified against Mason. R.R.'s stepbrother described how while at Mason's apartment, R.R. asked him not to leave her alone with Mason but that Mason locked him out of the bedroom. Her stepbrother further recounted that he heard his sister crying through the locked door and watched her later exit, sniffling, with her hair disheveled. Two other witnesses – one of whom was Mason's friend and the other of whom was R.R.'s boyfriend – both testified that Mason told them, separately, that he sexually assaulted R.R.[1]

The jury ultimately convicted Mason of three counts of first-degree unlawful sexual intercourse related to penetrative vaginal sex and oral sex. The jury acquitted him of the first-degree unlawful sexual intercourse count for forced penetrative anal sex but could not reach a verdict on the kidnapping count.[2] In August 1994, after denying Mason's post-trial motion for acquittal or a new trial contesting the guilty verdicts on the three counts, *see State v. Mason*, 1994 WL 1877137, at *5 (Del. Super. Ct. Aug. 16, 1994), the Delaware Superior Court sentenced him to 48 years, suspended after serving 45 years for three years of probation.

## PROCEDURAL HISTORY

In the years that followed, Mason challenged his conviction through civil collateral attacks. His petitions under Delaware Superior Court Criminal Rule 61 for postconviction relief initiated in 1996 and 1998 were unsuccessful. *See* Del. Super. Ct. Crim. R. 61; *Mason v. State*, 692 A.2d 413 (Table), at *2 (Del. 1997) (denying Mason's first petition for postconviction relief); *Mason v. State*, 725 A.2d 442 (Table), at *1, *3 (Del. 1999) (denying Mason's second motion for postconviction relief). But about twenty years later,

---

[1] R.R.'s sister, who was about three years old at the time of the incident and was described as being asleep the entire time, did not testify.

[2] The Government later entered a *nolle prosequi* on the kidnapping charge.

in June 2018, R.R. wrote a letter in support of Mason's release, and from the statement, Mason learned that R.R. had been admitted to a mental health facility shortly before and during his trial. *See Mason v. Ceresini*, 2024 WL 2832501, at *9 (D. Del. June 4, 2024). He investigated, and by January 2019, he obtained a key record related to her stay: the Discharge Summary. *Id.* That document, dated August 6, 1994, indicated that for about five days in June of 1994 – from the 19th to the 23rd – R.R. was admitted to a mental health facility for suicidal ideation. That document also provided a report of the mental examination performed while R.R. was admitted. It stated that "[s]he was fully oriented" and that "[a]ll tests of memory were good." Discharge Summ. 2 (App. 43).

Nevertheless, Mason believed that R.R.'s commitment before and during his trial was exculpatory for him as a means of undermining R.R.'s credibility. He formalized his claim for a *Brady* violation related to the suppression of material exculpatory evidence by filing a third Rule 61 motion for postconviction relief on February 20, 2019.[3]

The Delaware Superior Court summarily dismissed that motion. *See State v. Mason*, 2019 WL 6353372, at *7 & n.52 (Del. Super. Ct. Nov. 25, 2019), *aff'd*, 244 A.3d 681 (Table) (Del. 2020). It explained that under Delaware Superior Court Criminal Rule 61(i), subsequent motions for postconviction relief are barred "unless the motion pleads with particularity the existence of new evidence that creates a strong inference of actual innocence." *Id.* at *3 (citing Del. Super. Ct. Crim. R. 61(d)(2) & (5), (i)). And after concluding that Mason had failed to provide evidence that created such an inference, *see id.* at *7, the Superior Court did not analyze Mason's motion on the merits, *see id.* at *3.

---

[3] Mason also alleged that the statement R.R. wrote in favor of his release contradicted her earlier trial testimony and thus constituted exculpatory evidence, but the District Court did not grant a certificate of appealability for that issue. *See Mason*, 2024 WL 2832501, at *13.

4

Mason appealed that ruling, and the Delaware Supreme Court affirmed it. *See Mason*, 244 A.3d 681.

Mason then sought collateral review at the federal level by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 on June 17, 2021. The District Court denied the petition on the grounds that Mason's claim had been procedurally defaulted and that he could not overcome that default. *See Mason*, 2024 WL 2832501, at *10. The District Court did, however, grant Mason a certificate of appealability on the question of whether the Government's failure to disclose the Discharge Summary constituted a *Brady* violation. *See id.* at *13. That certificate of appealability, coupled with Mason's timely appeal, triggered this Court's appellate jurisdiction. *See* 28 U.S.C. §§ 1291, 2253(a).

## DISCUSSION

Because the Delaware state courts determined that Mason's third petition for postconviction relief was barred by Rule 61,[4] the *Brady* challenge he now brings is deemed exhausted.[5] But satisfying the exhaustion requirement by virtue of a state procedural rule that bars collateral review in state court comes with a consequence: it exposes a federal petitioner's § 2254 claim to dismissal on procedural default grounds. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th

---

[4] *See Mason*, 2019 WL 6353372, at *3 (applying Rule 61 to determine that "Mason's claims raised [in his motion for postconviction relief] should be summarily dismissed because they fail to meet the pleading requirements for proceeding with the motion on its merits").

[5] *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" (quoting in the second instance 28 U.S.C. § 2254(b))); *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 565 (3d Cir. 2024) (explaining that a "habeas claim is deemed exhausted" when "additional state-court review" is not available). *See generally Granberry v. Greer*, 481 U.S. 129, 131 (1987) (explaining that § 2254 exhaustion is non-jurisdictional).

553, 565 (3d Cir. 2024). In that circumstance, the general rule is that the petition must be dismissed absent a showing of cause and prejudice sufficient to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *accord McCandless*, 172 F.3d at 260.[6]

Here, the requirements for procedural default have been met. This Court has already determined that a denial of a postconviction collateral challenge on Rule 61(i) grounds is a procedural ruling. *See Flamer v. Delaware*, 68 F.3d 710, 717 n.4 (3d Cir. 1995) ("Subsection (i) of Rule 61 establishes the procedural bars to relief."). And Rule 61(i) was the basis for the Delaware courts' rejection of Mason's third Rule 61 motion. *See Mason*, 2019 WL 6353372, at *3, *7 & n.52 (summarily dismissing Mason's *Brady* claim based on Rules 61(d)(2) and (i)); *see also* Del. Super. Ct. Crim. R. 61(i) (explaining that a subsequent motion for postconviction relief may not be considered unless it satisfies the requirements of Rule 61(d)(2)).

By contrast, the cause-and-prejudice exception does not apply here. To make the cause-and-prejudice showings for an asserted *Brady* violation, a § 2254 petitioner must establish two of the elements of a *Brady* violation: (i) that the Government suppressed evidence and (ii) that the suppressed evidence is material. *See Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013). Although it is unclear how the Discharge Summary, which was dated *after* Mason's trial, could have been suppressed *before or during* trial, the Government asserts procedural default on the basis of only the materiality prong.

---

[6] A § 2254 petitioner may also avoid procedural default by demonstrating a "fundamental miscarriage of justice," but that requires a showing that "that he is *actually* innocent of the crime by presenting new evidence of innocence," and Mason has not attempted such proof. *Keller v. Larkins*, 251 F.3d 408, 415–16 (3d Cir. 2001) (emphasis added) (internal citations omitted).

Mason comes up short in that respect. To establish that a suppressed document is material, a habeas petitioner must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). And evidence pertaining to a witness's mental health cannot be material unless "it 'undermines [the witness's] reliability . . . or calls into question [her] ability to perceive, remember[,] and narrate perceptions accurately.'" *Lesko v. Sec'y Pa. Dep't of Corr.*, 34 F.4th 211, 233 (3d Cir. 2022) (first alteration in original) (quoting *United States v. Georgiou*, 777 F.3d 125, 141 (3d Cir. 2015)). The Discharge Summary did not contain that information; to the contrary, it indicated that "[a]ll tests of memory were good." Discharge Summ. 2 (App. 43).

Undeterred by that dead end, Mason contends that based on the Discharge Summary, R.R. must have exaggerated her conditions to gain admission to the mental health facility. Even assuming *arguendo* that the Discharge Summary could be read to support that inference and its consequences for R.R.'s credibility, "[t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Johnson*, 705 F.3d at 129 (quoting *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010)). And it is well established that evidence that "would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes." *Id.* At trial, R.R.'s testimony was strongly corroborated. Her stepbrother testified about what happened the night of the assault. And two other witnesses – one of whom was Mason's friend – testified that Mason described his sexual assault of R.R. to them. Thus, even if the Discharge Summary could support the inference that R.R. exaggerated her symptoms, the other witnesses corroborated the key aspects of her testimony, and so that document would not be material.

7

## CONCLUSION

For these reasons, the Rule 61(i) dismissal of Mason's petition for postconviction relief constitutes a state procedural ruling that bars consideration of Mason's § 2254 claim, and Mason has not made one of the requisite showings needed to overcome procedural default.