15-2516-cr
*United States v. Schaffer*

# In the

# United States Court of Appeals

## for the Second Circuit

————

AUGUST TERM 2016
No. 15-2516-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

GREGORY JOHN SCHAFFER, AKA JOHN ARCHAMBEAULT,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Eastern District of New York.

————

ARGUED: SEPTEMBER 27, 2016
DECIDED: MARCH 15, 2017

————

Before: WALKER, CABRANES, *Circuit Judges*, and BERMAN, *Judge.*[*]

————

[*] Judge Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

Gregory John Schaffer appeals from a judgment of conviction entered on July 24, 2015, following a trial in the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*). A jury convicted Schaffer of, among other crimes, coercing and enticing a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).

Prior to trial, Schaffer moved to suppress incriminating statements he made to law enforcement on the ground that they were made during a custodial interrogation without the benefit of a *Miranda* warning. The District Court denied Schaffer's motion, holding that Schaffer was not in "custody" for purposes of *Miranda*. Schaffer also opposed the government's introduction at trial of portions of four videos that showed him committing prior sexual assaults on two minor girls. He asserted that the admission of these videos would violate his right to due process. The District Court permitted the government to introduce the videos after concluding that they were admissible under Federal Rule of Evidence 413 and were not unfairly prejudicial under Federal Rule of Evidence 403. On appeal, Schaffer challenges both of the District Court's rulings, arguing, most notably, that Rule 413 violates the Due Process Clause of the Fifth Amendment.

We hold that the District Court did not err in denying Schaffer's motion to suppress, because Schaffer was not in custody at the time he made his incriminating statements. We further hold that Rule 413 does not violate the Due Process Clause, and that the

District Court did not err by permitting the government to introduce at trial portions of the four videos.

Accordingly, we **AFFIRM** the District Court's judgment of conviction.

————

> ALLEGRA GLASHAUSSER, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY *for Defendant-Appellant*.
>
> PETER W. BALDWIN, Assistant United States Attorney (Amy Busa, Assistant United States Attorney, *on the brief*) *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Gregory John Schaffer appeals from a judgment of conviction entered on July 24, 2015, following a trial in the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*). A jury convicted Schaffer of, among other crimes, coercing and enticing a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).

Prior to trial, Schaffer moved to suppress incriminating statements he made to Homeland Security Investigations ("HSI")

agents on the ground that they were made during a custodial interrogation without the benefit of a *Miranda* warning. The District Court denied Schaffer's motion, holding that the interview with Schaffer was not a custodial interrogation.[1]

Schaffer also opposed the government's introduction at trial of portions of four videos that showed him committing prior sexual assaults on two minor girls. The government asserted that the videos were admissible under Federal Rule of Evidence 413[2] and were not unfairly prejudicial under Federal Rule of Evidence 403.[3] In opposition, Schaffer argued that Rule 413 violated the Due Process Clause of the Fifth Amendment and that the videos were unfairly prejudicial. The District Court did not explicitly rule on Schaffer's constitutional challenge, but permitted the government to introduce limited portions of the videos pursuant to Rule 413 after concluding that they were not precluded by Rule 403.

---

[1] *United States v. Schaffer*, No. 12-CR-430 (ARR), 2014 WL 1515799, at *8–*10 (E.D.N.Y. Apr. 18, 2014).

[2] Rule 413 states in relevant part that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."

[3] Rule 403 requires a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

On appeal, Schaffer seeks to overturn his conviction on grounds that the District Court should have: (1) suppressed his incriminating statements to HSI agents because he was in custody during the interview within the meaning of *Miranda v. Arizona*[4] and its progeny; (2) excluded the four videos showing prior sexual assaults because Rule 413 violates the Due Process Clause; and (3) excluded the four videos because they were unfairly prejudicial.

We hold that the District Court did not err in denying Schaffer's motion to suppress, because Schaffer was not in custody at the time he made his incriminating statements. We further hold that Rule 413 does not violate the Due Process Clause and that the District Court did not err by permitting the government to introduce portions of the four videos at trial.

Accordingly, we **AFFIRM** the District Court's judgment of conviction.

## BACKGROUND

### I. Factual Overview

We set forth the facts necessary to decide the claims addressed in this opinion, and we view the evidence in the light most favorable to the government.[5]

---

[4] 384 U.S. 436 (1966).

[5] *See, e.g., United States v. Friedman*, 300 F.3d 111, 116 (2d Cir. 2002).

In March 2012, fifteen-year-old Strasia Sierra[6] posted an advertisement on the website Craigslist seeking a weekend or after-school job. Schaffer, then thirty-three years old, responded to Sierra's online ad with an email seeking part-time help at a retail store he owned in Jersey City, New Jersey. After exchanging several emails, including one in which Sierra informed Schaffer that she was fifteen years old, Sierra agreed to travel from Brooklyn, New York to Schaffer's office in New Jersey for an in-person job interview.

At the conclusion of her initial interview, during which Schaffer asked Sierra numerous sexually suggestive questions, Schaffer offered Sierra a job and directed her to return alone to his office the following day. Because Sierra needed money to help her family pays its bills, she accepted the position and returned to Schaffer's office as directed. During her second visit, Schaffer sexually assaulted Sierra.

First, Schaffer instructed Sierra to try on several different swimsuits and "adjusted" each new swimsuit she put on. These "adjustments" entailed Schaffer touching the area around her breasts, buttocks, and groin. Then, Schaffer put on his own swimsuit, posed with Sierra for photographs, and placed her hands over his groin. Finally, Schaffer forced Sierra to have sex with him on his desk.

---

[6] According to the government, both sides used the pseudonym "Strasia Sierra" at trial in place of the victim's real name.

Several days after the sexual assault occurred, a counselor from Sierra's school notified the New York City Police Department about the incident. As part of the ensuing investigation, law enforcement used Sierra's email account to arrange for another meeting between her and Schaffer. On the day that that meeting was scheduled to occur, nine HSI agents arrived at Schaffer's office building to conduct a search of the premises.

When law enforcement first entered the building to serve Schaffer with a warrant, some of the agents held Schaffer inside the doorway while other agents conducted a security sweep of the area. At no point did any of the agents handcuff Schaffer or draw their firearms. When the approximately one-minute-long sweep was over, Schaffer agreed to speak with Special Agents Robert Mancene and Megan Buckley in an area of the building adjacent to his office.

At the outset of the interview, the two agents notified Schaffer that he was not under arrest. They also did not handcuff or otherwise restrain him at any time during the interview. Instead, they permitted Schaffer to drink coffee and smoke cigarettes freely. At one point, Schaffer asked the agents whether he should have an attorney present. Agent Mancene informed Schaffer that he had a right to have an attorney present, but told him that he would have to decide for himself whether or not to exercise that right. At no point thereafter did Schaffer request an attorney.

Schaffer did, however, ask Agent Mancene twice during the interview if he could leave to collect money from an attorney located

down the street. Schaffer claimed that he needed the money to purchase medication, but never asserted that there was a medical emergency necessitating his purchase of the medication. He also never claimed that the attorney was *his* attorney. Agent Mancene denied both of Schaffer's requests on the ground that it would create a "security issue" and threaten the integrity of the search because the agents had placed boxes of evidence "all over the floor by the threshold of the doorway."[7] Ultimately, over the course of an approximately one-hour interview, Schaffer made several incriminating statements to Agents Mancene and Buckley, including admitting that he owned the email account used to communicate with Sierra.

At the conclusion of the interview, and after the agents reviewed the evidence collected during the search, Agent Mancene called the United States Attorney's Office for the Eastern District of New York and arrested Schaffer. Then, only after handcuffing Schaffer, Agent Mancene read him a *Miranda* warning.

During a subsequent forensic search of his office computer, law enforcement agents discovered, among other things, four videos showing Schaffer committing sexual assaults on two other minor

---

[7] App'x 32. According to Agent Mancene, there was a second door leading to the outside of the building, one unobstructed by the fruits of the search. While he could not recall whether Schaffer specifically inquired about the second door, Mancene testified that he would not have permitted Schaffer to leave the premises through that door because it went through a private office that was not covered by the search warrant.

girls. The first two videos showed Schaffer with a girl around the age of eight or nine years old. The girl was trying on swimsuits and Schaffer was fondling her body while "adjusting" the suits. One of the videos showed the girl performing oral sex on Schaffer while the other video showed Schaffer either having sex with, or masturbating on top of, the girl. Both videos were approximately six minutes long and neither of them included sound.

The third and fourth videos showed Schaffer interacting with a different minor girl inside of a hotel room. This girl was approximately twelve or thirteen years old. Both of these videos included sound and they had a combined length of eighty-seven minutes. They showed Schaffer telling the girl he was an FBI agent, offering her gifts, making her try on swimsuits, making her sit on the bed naked, and taking her into the bathroom.

In July 2012, a federal grand jury filed a four-count indictment against Schaffer charging him with, among other crimes, one count of coercing and enticing a minor to travel in interstate commerce to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b),[8] and one count of attempting to commit a violation of Section 2422(b). Two years later, a jury convicted Schaffer on all

---

[8] Section 2422(b) states that, "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

four counts of the indictment. The District Court sentenced Schaffer to 300 months' imprisonment.

## II. Schaffer's Pretrial Motion to Suppress

Prior to trial, Schaffer moved to suppress the statements he made during the interview with Agents Mancene and Buckley. He claimed that the District Court should exclude his statements because he made them during a custodial interrogation without having first received a *Miranda* warning. More specifically, he argued that he was in "custody" within the meaning of *Miranda* because the agents prevented him from leaving the interview, denied him access to an attorney, and denied him access to medication. The government opposed Schaffer's motion.

In order to resolve the motion, the District Court held a suppression hearing, at which Agent Mancene testified. Agent Mancene attested to the facts described above and the District Court found his testimony credible.[9] Relying on that testimony, the District Court denied Schaffer's motion to suppress, holding that no reasonable person in Schaffer's position would "have understood that his interrogation was being conducted pursuant to arrest-like restraints."[10]

---

[9] *Schaffer*, 2014 WL 1515799, at *3.

[10] *Id.* at *10 (quoting *United States v. Newton*, 369 F.3d 659, 677 (2d Cir. 2004)) (internal quotation marks omitted).

The District Court identified several factors leading to its conclusion that Schaffer was not in custody.[11] For example, the District Court noted that the agents informed Schaffer he was not under arrest, that Schaffer voluntarily agreed to speak with the agents, and that the agents did not restrain Schaffer during the interview.[12] While the District Court also recognized that Agent Mancene prevented Schaffer from leaving the interview, it concluded that such a limited restriction on Schaffer's freedom of action was not indicative of "custody" under the circumstances presented.[13] It also found no credible evidence supporting Schaffer's claim that agents denied him an attorney or medication.[14]

## III.  The Government's Motion *In Limine* Seeking Admission of the Four Videos

The government moved *in limine* to admit as evidence at trial fifteen minutes' worth of clips from the four videos showing Schaffer's prior sexual assaults.[15] Schaffer opposed the admission of

---

[11] *Id.* at *8.

[12] *Id.*

[13] *Id.* at *9.

[14] *Id.*

[15] There is some confusion regarding the length of the video clips that the government sought to introduce at trial. In his brief on appeal, Schaffer contends that the government sought to introduce "almost 100 minutes of video." Defendant's Br. 7. While that number approximates the total combined length of

the videos on grounds that (1) they were unfairly prejudicial under Rule 403, and that (2) Rule 413, which permits a court to admit evidence of a defendant's prior sexual assaults, violated the Due Process Clause.

After viewing the selected excerpts *in camera*,[16] the District Court permitted the government to introduce the edited videos at trial.[17] In its order granting the motion *in limine*, the District Court stated three supporting conclusions. First, the District Court agreed that the videos showed conduct qualifying as "sexual assault" within the meaning of Rule 413.[18] Second, it concluded that the videos were "highly relevant to the charges against Schaffer" because his intent to commit sexual acts with minors was at issue,

---

all four videos, there is no support in the record for Schaffer's assertion that the government showed, or intended to show, all ninety-plus minutes to the jury. Instead, the April 10, 2014 letter from the government to the District Court, which accompanied its submission of the four videos for *in camera* review, specifically noted certain segments that the government wished to introduce at trial. Government App'x 58–59. Those segments amounted to approximately fifteen minutes of video. *See id.* Although there is no indication in the trial transcript of the amount of time the government played the videos at trial, the fact that the District Court explicitly stated in its order granting the motion *in limine* that "[t]he government seeks to admit as evidence at trial select portions of the four videos," *Schaffer*, 2014 WL 1515799, at *6, supports the government's assertion on appeal that it played only fifteen minutes of combined footage from the videos at trial, Government's Br. 12.

[16] *Schaffer*, 2014 WL 1515799, at *6.

[17] *Id.* at *10–11.

[18] *Id.* at *10.

12

and the videos showed that Schaffer had a pattern of "enticing girls into situations in which they are alone with him and making them try on swimsuits before forcing them to engage in sexual conduct."[19] Third, it concluded that the videos were not unfairly prejudicial because they did not show conduct more inflammatory than the conduct alleged in the indictment and because the jury could not discern that the other girls were significantly younger than Sierra.[20]

## DISCUSSION

I.    **Schaffer's Challenge to the District Court's Denial of his Motion to Suppress**

a.    <u>Standard of Review</u>

In an appeal of an order denying a motion to suppress, we review a district court's legal conclusions *de novo* and its factual findings for clear error, viewing the evidence in the light most favorable to the government.[21] We will not overrule the credibility findings of a district court unless they are clearly erroneous.[22]

---

[19] *Id.*

[20] *Id.* at *11.

[21] *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 177, 198 (2d Cir. 2008).

[22] *United States v. Yousef*, 327 F.3d 56, 124 (2d Cir. 2003).

13

b.       The Principles Governing the Application of *Miranda*

Pursuant to the Supreme Court's decision in *Miranda v. Arizona*, the prosecution is prohibited from using at trial a defendant's statements made during a "custodial interrogation" unless "it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[23] There is no dispute that Agent Mancene did not advise Schaffer of his *Miranda* rights until after Schaffer had made his incriminating statements. Accordingly, the only relevant issue on appeal is whether Schaffer was in "custody" for purposes of *Miranda* when he spoke with law enforcement agents.

As we have had occasion to observe, "'[c]ustody' for *Miranda* purposes is not coterminous with . . . the colloquial understanding of custody."[24] Instead, an individual is in "custody" only if two conditions are met: (1) "a reasonable person would have thought he was [not] free to leave the police encounter at issue" and (2) "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest."[25]

---

[23] *Miranda*, 384 U.S. at 444. *Miranda* requires law enforcement to advise a suspect that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

[24] *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (quoting *United States v. FNU LNU*, 653 F.3d 144, 152–53 (2d Cir. 2011)).

[25] *Id.* (quoting *Newton*, 369 F.3d at 672).

While the first condition—a seizure—is necessary for concluding that a suspect was in custody, "not every seizure constitutes custody for purposes of *Miranda*."[26] Thus, the "ultimate inquiry" is whether a reasonable person would have understood the law enforcement agents' restraint on his freedom to equal "the degree associated with a formal arrest."[27]

To determine whether a suspect's freedom of movement was "curtailed to a degree associated with formal arrest," courts are required to conduct an objective examination of "all the surrounding circumstances."[28] Because our case law requires an *objective* inquiry, "[a]n individual's subjective belief about his or her status generally does not bear on the custody analysis."[29] Rather, a court should consider a variety of factors including:

> (1) the interrogation's duration; (2) its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether

---

[26] *Newton*, 369 F.3d at 672.

[27] *Id.* at 670 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

[28] *Faux*, 828 F.3d at 135.

[29] *Id.*

they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion.[30]

Ultimately, if a court determines that it was reasonable for the individual being interrogated to conclude that his detention was "not likely to be temporary and brief" and to feel that he was "completely at the mercy of [the] police," then the individual was in "custody" and *Miranda*'s protections apply.[31]

c.      Schaffer Was Not in "Custody" during the Interview

Schaffer argues that the District Court erred by denying his motion to suppress because he was in "custody" during his interview with Agents Mancene and Buckley. Specifically, Schaffer contends that his interview was "custodial" because Agent Mancene twice denied his request to leave the office. The District Court examined all of the surrounding circumstances, including the denial of Schaffer's two requests to leave, and concluded that a reasonable person in Schaffer's position would not have considered himself subject to arrest-like constraints and, thus, Schaffer was not in "custody."[32] We agree. Under the circumstances presented here, a reasonable person would not believe that his freedom of movement

---

[30] *Id.* (internal quotation marks omitted).

[31] *Id.* (internal quotation marks omitted).

[32] *Schaffer*, 2014 WL 1515799, at *10.

16

was "curtailed to a degree associated with formal arrest."[33] The fact that law enforcement agents denied Schaffer's requests to leave his office would not cause a reasonable person to think otherwise, because a reasonable person would have viewed the agents' limited restriction on his freedom of movement as necessary to protect the integrity of the ongoing search.

As an initial matter, the District Court held an evidentiary hearing on Schaffer's motion to suppress, at which it found the testimony of Agent Mancene to be credible, "particularly in light of the fact that it [was] controverted only by Schaffer's own self-serving declaration."[34] On appeal, Schaffer does not contest the District Court's credibility finding or its resulting factual findings. Accordingly, we adopt the findings of the District Court and review only its legal conclusion that Schaffer was not in "custody."

In holding that Schaffer was not in "custody," the District Court considered the following facts: (1) Schaffer was not handcuffed or otherwise physically restrained during his interview; (2) at no point did any of the agents have their weapons drawn; (3) the agents interviewed Schaffer in the familiar surroundings of his office and permitted him to drink coffee and smoke cigarettes; (4) the agents informed Schaffer that he was not under arrest; (5) Schaffer voluntarily agreed to speak with the agents; (6) the

---

[33] *Newton*, 369 F.3d at 672.

[34] *Schaffer*, 2014 WL 1515799, at *3.

interview lasted only about an hour; and, (7) there was no evidence that Schaffer asked for an attorney or that the agents denied a request for an attorney.[35] The District Court concluded that each of those facts cut against holding that Schaffer was in custody.[36] It also considered the fact that Agent Mancene denied Schaffer's two requests to leave, understanding that fact to suggest that Schaffer's freedom of movement was indeed curtailed, but it declined to treat that fact as decisive because it reflected only a limited restriction on Schaffer's freedom of movement.[37]

Because "not every seizure constitutes custody for purposes of *Miranda*,"[38] a custodial interrogation will be found only where a reasonable person would have understood the restraint on his freedom of movement to be "of the degree associated with a formal arrest."[39] Where there is evidence that an individual's freedom to move was limited, courts should consider whether "the relevant environment presents the same inherently coercive pressures as the

---

[35] *Id.* at *8–9.

[36] *Id.*

[37] *Id.* at *9.

[38] *Newton*, 369 F.3d at 672; *see also Howes v. Fields*, 565 U.S. 499, 509 (2012) ("Not all restraints on freedom of movement amount to custody for purposes of *Miranda*.").

[39] *Newton*, 369 F.3d at 670 (internal quotation marks omitted).

type of station house questioning at issue in *Miranda*."[40] Based on the uncontested factual findings of the District Court, it is clear that Schaffer's interview did not constitute a coercive environment tantamount to a formal arrest.[41]

The fact that there were nine agents in the office during the interview and that Agent Mancene denied Schaffer the ability to leave the interview while the search of his office continued do not compel a different conclusion. First, as we have explained before, "the number of officers is typically not dispositive" of custody.[42] Moreover, while there were nine agents inside Schaffer's office during the search, only Agents Mancene and Buckley conducted the interview, which took place in a separate part of the office away

[40] *Fields*, 565 U.S. at 509.

[41] S*ee, e.g.*, *Faux*, 828 F.3d at 138–39 (holding that individual was not in custody for purposes of *Miranda* where law enforcement agents questioned her inside her own home, did not handcuff her, did not display their weapons, and informed her that she was not under arrest); *FNU LNU*, 653 F.3d at 155 (holding that defendant subject to interview at airport was not in custody where officers never drew their weapons, did not restrain the defendant, and asked questions relevant to defendant's admissibility to the United States); *United States v. Badmus*, 325 F.3d 133, 138–39 (2d Cir. 2003) (holding that a reasonable person would not have considered himself in custody where law enforcement agents questioned him in his own home, did not draw their weapons, and told him he was not under arrest).

[42] *Faux*, 828 F.3d at 136; *see Badmus*, 325 F.3d at 139 (holding that there was no custodial interrogation even though there were six law enforcement officers present in one small apartment); *Newton*, 369 F.3d at 675 (observing that the presence of six officers "would not, by itself, have led a reasonable person . . . to conclude that he was in custody").

19

from the other seven agents. A reasonable person would not have felt "completely at the mercy of [the] police"[43] simply because he knew seven other agents were searching his office.

Second, a reasonable person in Schaffer's position would not have concluded that being prohibited from leaving his office during an ongoing search was equivalent to a formal arrest. Instead, he would have considered the restriction on his freedom of movement to be a "sensible precaution" designed to protect the integrity of an ongoing search.[44] Agent Mancene testified that he instructed Schaffer that leaving the office would present a "security issue" because the "agents had set up . . . the boxes [of evidence] and the chains of custody, and they were all over the floor by the threshold

---

[43] *Faux*, 828 F.3d at 135 (internal quotation marks omitted).

[44] *Id.* at 137 (explaining that "[a] reasonable person would understand that being accompanied in one's home by agents who are legally present to execute a search warrant is a sensible precaution and that (absent other hallmarks of custody) freedom of action is not being curtailed to a degree associated with formal arrest" (internal quotation marks omitted)).

While there was a second, unobstructed exit out of the building, there is no evidence that Schaffer inquired about that door in particular or that Mancene gave a separate explanation for why Schaffer could not leave through that door. For that reason, there was no basis for Schaffer to have believed that Agent Mancene's explanation did not describe the conditions of both possible exits. Thus, the fact that Schaffer may have known about a second door, without more, does not establish that a reasonable person would have considered Agent Mancene's denial of a request to leave to be equal to an arrest.

20

of the doorway . . . ."[45] Considering the other conditions present during Schaffer's interview, no reasonable person in his position would have interpreted Agent Mancene's explanation as pretextual. Rather, his explanation that the exit was blocked by agents collecting and cataloguing evidence reasonably suggests that Schaffer's detention would be "temporary and brief."[46] A reasonable person in Schaffer's position would have assumed that law enforcement would permit him to leave the office once they had completed their search.

The reasonableness of Agent Mancene's precautionary denial is underscored by the triviality of Schaffer's request to leave. Schaffer asked to leave the office because he wanted to collect money from an acquaintance. A reasonable person would not have expected law enforcement to permit him to leave the site of an ongoing search for such an inconsequential purpose. In contrast, if Schaffer had requested permission to depart the interview because he needed to address some timely emergency, and if law enforcement agents had denied such a request, it might be reasonable for Schaffer to have felt more "completely at the mercy of [the] police."[47] No such exigency, however, was mentioned here. Consequently, while Agent Mancene did curtail Schaffer's freedom

---

[45] App'x 32.

[46] *Faux*, 828 F.3d at 135 (internal quotation marks omitted).

[47] *Id.* (internal quotation marks omitted).

of action, his denial of Schaffer's request to leave was not, on the facts presented, indicative of an arrest-like restraint.[48]

In sum, a reasonable person in Schaffer's position would not have concluded that "his freedom of action [was] curtailed to a degree associated with formal arrest."[49] Schaffer, therefore, was not in "custody" and law enforcement were not required to deliver a *Miranda* warning before questioning him. The District Court properly denied his motion to suppress.

## II.    Schaffer's Challenge to the District Court's Admission at Trial of Four Videos Showing Prior Sexual Assaults

a.    Standard of Review

We review *de novo* a challenge to the constitutionality of a statute.[50] And, "mindful of [a district court's] superior position to assess relevancy and to weigh the probative value of evidence

---

[48] *See id.* at 137 (holding that defendant was not in custody even though she "was not permitted to move freely about her home during the two-hour interrogation [and] agents accompanied her to the bathroom and to her bedroom to fetch a sweater"); *Badmus*, 325 F.3d at 139 (holding that defendant was not in custody even though the "[d]efendant and his wife were asked to stay seated in the living room and not allowed to move freely about the apartment"); *United States v. Ross*, 719 F.2d 615, 622 (2d Cir. 1983) ("The mere fact that Ross was told he would be accompanied by an IRS agent when he moved about the restaurant did not place him in custody within the meaning of *Miranda*.").

[49] *Newton*, 369 F.3d at 672.

[50] *United States v. Murphy*, 979 F.2d 287, 289 (2d Cir. 1992).

against its potential for unfair prejudice," we review a district court's evidentiary rulings for "abuse of discretion."[51]

b.    Federal Rule of Evidence 413 Does Not Violate the Due Process Clause

Schaffer asserts that the District Court's admission of portions of four videos showing his prior sexual assaults under Rule 413 violated the right to due process of law guaranteed by the Fifth Amendment. He argues that the "common-law tradition"[52] of prohibiting prosecutors from using evidence of prior bad acts to establish a probability of guilt is so fundamental in our criminal justice system that the admission of propensity evidence[53] pursuant

---

[51] *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010). We have often explained that "abuse of discretion is a distinctive term of art that is not meant as a derogatory statement about the district judge whose decision is found wanting." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 610–11 (2d Cir. 2016) (internal quotation marks omitted). "[T]he term merely signifies that a district court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

[52] *Michelson v. United States*, 335 U.S. 469, 475 (1948).

[53] The term "propensity evidence" refers to evidence of a defendant's prior criminal acts, which a prosecutor uses for the purpose of suggesting that "because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." 1 GEORGE E. DIX ET AL., MCCORMICK ON EVIDENCE § 190 (Kenneth S. Broun & Robert P. Mosteller eds., 7th ed. 2013 & Supp. 2016).

to Rule 413 "violates fundamental conceptions of justice."[54] While we recognize that Rule 413 represents an exception to the general "ban against propensity evidence,"[55] we agree with every other court of appeals that has addressed this issue and hold that, in light of the safeguards provided by Rule 403, Rule 413 on its face does not violate the Due Process Clause.[56]

Rule 413 provides that "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." Unlike Federal Rule of Evidence 404(b), which allows prior bad act evidence to be used for purposes *other than* to show a defendant's propensity to commit a particular crime, Rule 413 permits the jury to consider the evidence "on any matter to which it is relevant." In

---

[54] *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted).

[55] *United States v. Enjady*, 134 F.3d 1427, 1432 (10th Cir. 1998); *see also Michelson*, 335 U.S. at 475 (explaining that "[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt").

[56] *See United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (holding that Rule 413 does not violate the Due Process Clause); *Enjady*, 134 F.3d at 1430–33 (same); *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (holding that Federal Rule of Evidence 414, a companion to Rule 413 addressing the admission of propensity evidence in cases of child molestation, is constitutional on its face); *cf. United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005) (holding that Rule 413 does not deprive a defendant of the equal protection of the law in violation of the Due Process Clause).

other words, a prosecutor may use evidence of prior sexual assaults precisely to show that a defendant has a pattern or propensity for committing sexual assault.[57] In passing Rule 413, Congress considered "[k]nowledge that the defendant has committed rapes on other occasions [to be] critical in assessing the relative plausibility of [sexual assault] claims and accurately deciding cases that would otherwise become unresolvable swearing matches."[58]

For Schaffer to succeed on his claim that Rule 413 offends the Due Process Clause, he must show that its presumption favoring the admission of propensity evidence in sexual assault cases "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions."[59] The necessary predicate to such a showing, of course, would be a determination that prohibiting the use of propensity evidence in prosecutions for sexual assault is a "fundamental conception[ ] of justice." To ascertain whether that is

---

[57] *See Enjady*, 134 F.3d at 1431 (explaining that "[i]n passing Rule 413 Congress believed it necessary to lower the obstacles to admission of propensity evidence in a defined class of cases"); 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 413.04 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2017) (explaining that Rule 413 "was designed to overcome the limitation imposed by Rule 404(b) against using evidence of other crimes or bad acts to show that the defendant had the propensity to commit the act charged").

[58] *Enjady*, 134 F.3d at 1431 (quoting 140 CONG. REC. S12990–01, S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Robert Dole)).

[59] *Dowling*, 493 U.S. at 353 (internal quotation marks omitted).

indeed the case, we must examine "historical practice."[60] In conducting that inquiry, we are mindful of the Supreme Court's admonition that "[j]udges are not free, in defining 'due process,' to impose on law enforcement officials our 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.'"[61] To that end, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly" and instructed that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."[62]

Schaffer argues that the historical practice of courts in this country is to prohibit the use of propensity evidence in criminal prosecutions. As a general matter, Schaffer is correct.[63] Not only is a

---

[60] *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (stating that "[o]ur primary guide in determining whether the principle in question is fundamental is, of course, historical practice").

[61] *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (quoting *Rochin v. California*, 342 U.S. 165, 170 (1952)).

[62] *Dowling*, 493 U.S. at 352.

[63] *See, e.g., Boyd v. United States*, 142 U.S. 450, 458 (1892) (reversing conviction on the ground that the jury convicted defendants on the basis of evidence relating to the commission of prior crimes and not on the basis of competent evidence of the specific crimes charged); *see also LeMay*, 260 F.3d at 1025 ("[I]t seems clear that the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status."); *United States v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998) (assuming, without deciding, that the

26

general prohibition on propensity evidence embodied in Rule 404(b),[64] but the Supreme Court has repeatedly extolled, though often in dicta, the virtues of the "common-law tradition" of "disallow[ing] resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of guilt."[65] However, as other courts of appeals have explained, the evidence regarding the historical practice of allowing (or disallowing) propensity evidence *in prosecutions for sex crimes* is mixed.[66] For example, many jurisdictions presently have evidentiary rules analogous to both Rule 413 and its companion rule addressing child molestation, Federal Rule of Evidence 414,[67] and have had rules

---

general ban on the use of propensity evidence is a protection guaranteed by the Due Process Clause).

[64] Rule 404(b) states in relevant part that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[65] *Michelson*, 335 U.S. at 475; *see also Old Chief v. United States*, 519 U.S. 172, 182 (observing in dicta that "[t]here is . . . no question that propensity would be an 'improper basis' for conviction").

[66] *See LeMay*, 260 F.3d at 1025–26 (explaining that "[i]n many American jurisdictions, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery, and child molestation"); *Castillo*, 140 F.3d at 881 (concluding that "the historical record regarding evidence of one's sexual character is much more ambiguous").

[67] *See, e.g.*, GEORGE E. DIX ET AL., *ante* note 53 (explaining that "many jurisdictions now admit proof of other sex offenses with other persons, at least as to offenses involving sexual aberrations. Furthermore, courts in many of the jurisdictions that still do not overtly admit evidence of sex crimes with other

---

permitting the use of various kinds of propensity evidence in prosecutions for sex crimes for the past century and a half.[68]

Short of citing three recent cases in the highest courts of Washington,[69] Iowa,[70] and Missouri,[71] all of which invalidated, for one reason or another, state laws parallel to Rule 413, Schaffer fails to present evidence compelling a different historical analysis. Because Schaffer bears the burden of establishing[72] that the prohibition of propensity evidence in *sexual-offense cases* is a "fundamental conception[ ] of justice,"[73] the lack of conclusive historical evidence is a sufficient ground on which to reject his due

victims as revealing an incriminating propensity achieve a similar result by stretching to find a nonpropensity purpose" (footnotes omitted)).

[68] *See, e.g.*, Thomas J. Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases*, 21 AM. J. CRIM. L. 127, 169–182 (1993) (describing the historical development of evidentiary rules permitting the introduction of certain kinds of propensity evidence in prosecutions for statutory rape, rape, incest, adultery, and sodomy); GEORGE E. DIX ET AL., *ante* note 53 (explaining that courts initially admitted evidence of prior sexual acts if it involved the same parties).

[69] *State v. Gresham*, 269 P.3d 207 (Wash. 2012).

[70] *State v. Cox*, 781 N.W.2d 757 (Iowa 2010).

[71] *State v. Ellison*, 239 S.W.3d 603 (Mo. 2007).

[72] *Egelhoff*, 518 U.S. at 47 (explaining that the respondent, and not the state, bears the burden of demonstrating that the principle violated by the rule in question is "deeply rooted").

[73] *Dowling*, 493 U.S. at 353 (internal quotation mark omitted).

process claim. Nevertheless, because the admission of propensity evidence raises the specter of unfairness, we do not rely solely on the lack of any established historical practice of prohibiting the admission of propensity evidence in sexual-assault cases to deny Schaffer's constitutional challenge. Instead, we independently conclude that Rule 413 does not threaten a defendant's right to due process.

Justice Robert H. Jackson, writing for the Court in *Michelson v. United States*, described the justification for the general policy of excluding propensity evidence as follows:

> The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.[74]

---

[74] *Michelson*, 335 U.S. at 475–76 (footnotes omitted).

We share Justice Jackson's concern that propensity evidence may cause "undue prejudice" to a defendant and, as a result, threaten his right to a fair trial. However, we conclude, like the Eighth, Ninth, and Tenth Circuits before us, that the protections provided in Rule 403, which we now explicitly hold apply to evidence being offered pursuant to Rule 413, effectively mitigate the danger of unfair prejudice resulting from the admission of propensity evidence in sexual-assault cases.[75] Because Rule 403 requires a district court to determine whether the probative value of any evidence "is substantially outweighed by a danger of . . . unfair prejudice,"[76] the practical effect of Rule 413 is to create a presumption that evidence of prior sexual assaults is relevant and probative in a prosecution for sexual assault.[77] It does not require or guarantee the admission of all propensity evidence in every sexual-assault case. Where in a particular instance the admission of evidence of prior sexual assaults would create "undue prejudice" and threaten due process, district courts can and should, by operation of Rule 403, exclude that evidence and ensure the defendant's right to a fair trial.

---

[75] *See Enjady*, 134 F.3d at 1431, 1433 (holding that admission of evidence under Rule 413 does not violate Due Process Clause because it is subject to Rule 403's balancing test); *Mound*, 149 F.3d at 800–01 (same); *LeMay*, 260 F.3d at 1026 (holding that Rule 414 does not violate Due Process Clause because Rule 403 applies to the admission of evidence under Rule 414); *see also United States v. Larson*, 112 F.3d 600, 604–05 (2d Cir. 1997) (holding that Rule 403's balancing test applied to evidence being offered under Rule 414).

[76] FED. R. EVID. 403.

[77] *See Enjady*, 134 F.3d at 1431.

Schaffer's primary argument on appeal is his contention that Rule 413's fundamental assumption "that past sex offenses are valid proof of future ones" is not supported by empirical evidence.[78] To bolster his claim, Schaffer describes the serious opposition to Rule 413 at the time Congress enacted it[79] as well as the continued opposition to the Rule since its passage.[80] However, our conclusion that Rule 413 does not on its face violate the Due Process Clause does not turn on our assessment (much less our endorsement) of the Rule's underlying rationale.[81] As the Supreme Court has observed in

---

[78] Defendant's Br. 40.

[79] *See, e.g.*, Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases, transmitted to Congress on Feb. 9, 1995, 159 F.R.D. 51, 53 (1995) (opposing enactment of Rules 413, 414, and 415 on the ground, among others, that "the new rules, which are not supported by empirical evidence, could diminish significantly the protections that have safeguarded persons accused in criminal cases and parties in civil cases against undue prejudice").

[80] *See, e.g.*, Tamara Rice Lave & Aviva Orenstein, *Empirical Fallacies of Evidence Law: A Critical Look at the Admission of Prior Sex Crimes*, 81 U. CIN. L. REV. 795, 796 (2013) (arguing "that the psychological and criminological research on sex offenders does not support the high probative value assigned to prior bad acts in sex cases").

[81] *See* David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 CHI.–KENT L. REV. 15, 20 (1994) (explaining that one of the primary arguments in favor of Rule 413 was that "the past conduct" of "[a] person with a history of rape or child molestation . . . provides evidence that he has the combination of aggressive and sexual impulses that motivates the commission of such crimes, that he lacks effective inhibitions against acting on these impulses, and that the risks involved do not deter him. A charge of rape or

another context, "[t]he criterion of constitutionality is not whether we believe the law to be for the public good."[82] The wisdom of an evidentiary rule permitting the use of propensity evidence in prosecutions for sexual assault is not "the concern of the courts."[83] Rather, our concern is only whether Rule 413 violates fundamental principles of due process. We conclude that it does not. Deliberating the merits and demerits of Rule 413 is a matter for Congress alone.

c.     The District Court Did Not Err by Permitting the Government to Introduce the Four Videos at Trial

Schaffer also argues that, even if Rule 413 is constitutional, the District Court erred in admitting at trial excerpts from four videos showing him sexually assaulting two other minor girls.[84] He

---

child molestation has greater plausibility against a person with such a background"); *see also* 140 CONG. REC. at S12990 (statement of Sen. Robert Dole, principal sponsor of Rule 413, referring to David Karp's work as "provid[ing] a detailed account of the views of the legislative sponsors and the administration concerning the proposed reform, and should also be considered an authoritative part of its legislative history").

[82] *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963) (internal quotation marks omitted) (quoting *Adkins v. Children's Hosp. of the D.C.*, 261 U.S. 525, 570 (1923) (Holmes, J., dissenting)).

[83] *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983) (explaining that the constitutionality, rather than the wisdom, of a particular statute is the "concern of the courts").

[84] Schaffer does not dispute that the videos were admissible under Rule 413: he was charged with offenses qualifying as "sexual assaults" within the

contends that the probative value of the videos was minimal and that the videos created unfair prejudice.

The District Court reviewed the videos *in camera* and concluded that they were highly relevant to the charges against Schaffer and that the resulting prejudice was not unfair. We agree. The video evidence was certainly prejudicial, but that prejudice did not substantially outweigh the probative value of the evidence given the severity of the crimes charged, the similarity between Schaffer's acts in the videos and the acts alleged in the indictment, and the fact that Schaffer argued at trial that the government failed to prove his intent to engage Sierra in illegal sex. In these circumstances, we cannot conclude that the District Court erred in admitting the video evidence.

Rule 403 requires a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." However, the fact that evidence "may be highly prejudicial" does not necessarily mean that it is "unfairly prejudicial."[85] The distinction between "highly prejudicial" evidence and "unfairly prejudicial" evidence "will often be difficult to

---

meaning of Rule 413 and the conduct shown on the four videos similarly qualified as "sexual assault."

[85] *United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (internal quotation marks omitted) (holding that a district court did not abuse its discretion in admitting at trial a nineteen-year old conviction for child molestation).

determine."[86] For that reason, "we accord great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence."[87]

The government introduced at trial approximately fifteen minutes' worth of video evidence showing Schaffer committing sexual assaults on two other minor girls. The video clips showed two girls between the ages of eight and thirteen years old trying on swimsuits for Schaffer and having their bodies fondled by him. Two of the videos also showed one of the girls performing sexual acts on Schaffer.

The District Court concluded that these video clips were "highly relevant to the charges against Schaffer."[88] Specifically, the District Court reasoned that:

> Schaffer's prior acts demonstrating his sexual interest in minor females are extremely relevant to the question of his intent here. This is particularly so because of the similarities between the conduct shown on the videos and Schaffer's alleged conduct with [Sierra]. The videos

---

[86] *Id.* (internal quotation marks omitted).

[87] *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (internal quotation marks omitted).

[88] *Schaffer*, 2014 WL 1515799 at *10.

show a pattern of Schaffer's enticing girls into situations in which they are alone with him and making them try on swimsuits before forcing them to engage in sexual conduct. This pattern is highly probative of the question of his intent here.[89]

On appeal, Schaffer argues that the probative value of the videos was negligible because: (1) the significant age difference between the girls in the videos and Sierra undermines the idea that Schaffer has a predilection for girls of a certain age, (2) the existence of a video showing Sierra trying on swimsuits already puts his practice of having girls try on swimsuits beyond dispute, and (3) the videos were not necessary to corroborate Sierra's testimony because Schaffer did not put forth a credibility or consent defense.

We agree with the District Court that the videos were highly probative of Schaffer's guilt. To prove that Schaffer committed the crimes charged in the indictment, the government had to establish that Schaffer intended to engage in sexual acts with Sierra at the time he asked her to travel to New Jersey. The video evidence challenged here tended to demonstrate Schaffer's sexual intent at the time he contacted Sierra because it reveals a pattern of illegal conduct that involved having minor girls visit him alone and try on swimsuits as a precursor to sexual assault. While it is true that Schaffer did not put forth a consent defense and did not challenge the credibility of Sierra's testimony, his defense at trial was

---

[89] *Id.*

35

predicated on questioning the government's ability to establish his intent to entice Sierra into unlawful sexual acts.

Contrary to Schaffer's arguments on appeal, the fact that the girls in the videos were slightly younger than Sierra does not undercut the probative value of the evidence regarding Schaffer's guilt in this case. Not only does Section 2422(b) criminalize enticing a*ll individuals under the age of 18,* drawing no distinction between nine-, thirteen-, or fifteen-year-old victims,[90] but evidence that Schaffer had a sexual interest in nine- and thirteen-year-old girls makes it more likely, not less, that he would have a sexual interest in the fifteen-year-old victim. Furthermore, the existence of video evidence showing Sierra trying on swimsuits enhances, rather than diminishes, the probative value of the four challenged videos because it demonstrates a clear pattern of sexual behavior.

The District Court also concluded that the probative value of the videos was not substantially outweighed by the danger of unfair prejudice. It considered the age difference between Sierra and the two girls in the videos and found that a viewer could not readily discern that there were any significant differences in age.[91] It concluded also that the conduct in the videos was no more inflammatory than the conduct alleged in the indictment, namely

---

[90] *See ante* note 8.

[91] *Schaffer*, 2014 WL 1515799 at *11.

nonconsensual sexual acts with a fifteen-year-old girl.[92] And, it determined that the government limited the potential for unfair prejudice by showing the jury only short portions of the videos.[93]

Schaffer, of course, disagrees. He argues that the prejudicial effect of the evidence was unfair because: (1) the videos showing his sexual assaults on young children were too inflammatory, (2) the videos were graphic and there was no video of his alleged sexual assault on Sierra, and (3) the District Court instructed the jury that they could consider the videos for any purpose.

We find no error in the District Court's conclusion that the videos did not cause unfair prejudice. First, the conduct portrayed in the videos was not more inflammatory than the conduct for which Schaffer was being tried. Rather, all of the sexual conduct was essentially identical. The fact that the girls in the video were slightly younger than Sierra does not make his assaults on them more inflammatory because there were no observable differences in age. Second, any prejudice produced by the graphic nature of the videos was minimized by the government limiting the total runtime of the videos to only fifteen minutes. And third, the District Court's evidentiary instruction was legally correct: Rule 413 explicitly permits a jury to consider evidence of prior sexual assaults for "any matter to which it is relevant."

---

[92] *Id.*

[93] *Id.*

In fact, the District Court's cautionary instructions to the jury, which it gave both at the time the government introduced the videos and immediately prior to the commencement of deliberations, further reduced the risk of unfair prejudice.[94] It informed the jurors, among other things, that Schaffer was not being charged for the conduct presented in the videos and that "evidence of another offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the indictment in this case."[95]

In enacting Rule 413, Congress intended to create a presumption that evidence of prior sexual assaults, such as the video evidence at issue here, is relevant and probative in prosecutions for sexual assault.[96] As we have held, that presumption does not violate the Due Process Clause in a particular case so long as a district court weighs the prejudicial effect of the evidence against its probative value. Here, the District Court considered the four videos consistent with the dictates of Rule 413 and, after conducting a Rule 403 analysis, found the videos to be relevant and highly probative of Schaffer's intent and not unfairly prejudicial. After careful review of

---

[94] *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("In assessing the risk of prejudice against the defendant, the trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible. Whatever the criticism of such instructions, they remain an accepted part of our present trial system." (footnote omitted)).

[95] App'x 210.

[96] *See, e.g., Enjady*, 134 F.3d at 1431.

the record and bearing in mind the "great deference" accorded to district courts in resolving evidentiary questions,[97] we conclude that the District Court did not exceed its discretion in admitting the four videos at trial.

## CONCLUSION

To summarize: we hold (1) that the District Court did not err in denying Schaffer's motion to suppress because Schaffer was not in custody during his interview, (2) that Rule 413 does not violate the Due Process Clause, and (3) that the District Court did not err by admitting portions of the four videos at trial.

For the reasons set out above, we **AFFIRM** the District Court's judgment of conviction.

---

[97] *Quinones*, 511 F.3d at 310 (internal quotation mark omitted).