**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3240
_____

HOWARD SCOTT ALLISON,

Appellant

v.

SUPERINTENDENT WAYMART SCI;
ATTORNEY GENERAL PENNSYLVANIA;
DISTRICT ATTORNEY RICHARD A. CONSIGLIO
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 3-13-cv-00068)
District Judge:  Honorable Kim R. Gibson
_____

Submitted: April 12, 2017

Before:  CHAGARES, SCIRICA and FISHER, Circuit Judges.

(Filed: August 9, 2017)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Howard Scott Allison filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, arguing that the state trial court's decision during his criminal trial to admit testimony of prior bad acts violated his due process rights under the Fourteenth Amendment of the United States Constitution. The District Court denied the petition. We will affirm.

I.

In 2007, the Blair County District Attorney charged Allison with three felonies after Allison's niece reported to her counselor that Allison had sexually assaulted her nine years earlier, when she was six years old. Allison was charged with: Rape of a Person Less than 13 Years Old in violation of 18 Pa. C.S.A. § 3121(a)(6), Statutory Sexual Assault in violation of 18 Pa. Cons. Stat. § 3122.2, and Corruption of Minors in violation of 18 Pa. Cons. Stat. § 6301(a)(1).

The Commonwealth filed a pretrial motion to admit the testimony of Allison's two adult sisters that he molested them when they were children. Allison argued that the sisters' testimony was inadmissible because Pa. R. Evid. 404 barred evidence of prior uncharged criminal activity, and that the only purpose of the sisters' testimony was to show he acted in conformity with the alleged earlier assaults and to prejudice the jury. The judge admitted the testimony on the basis that it fell under the common scheme or plan exception to the prohibition against prior bad acts evidence pursuant to Pa. R. Evid. 404, and that it was not unduly prejudicial. The judge added that without this challenged

2

testimony, the lack of corroboration for the niece's claims might "very well [] lead [] a reasonable jury to conclude they have reasonable doubt." App. 44.

At trial, both sisters testified that their older brother Allison assaulted them in their family home in the 1980s. One sister testified that Allison, who is about seven years older than her, molested her beginning when she was about five years old and continued until she was about ten or eleven, when her parents found out. The other sister, who is about twelve years younger than Allison, testified that he molested her for about a year starting from when she was five years old.

As a part of the jury charge, the trial judge gave the following instructions:

> During the course of the trial and as one of the theories of prosecution giving support to the Commonwealth's delivery of this case to you is the Commonwealth's theory of common design or purpose. You've heard evidence tending to prove that the defendant was guilty of some improper conduct for which he is not on trial now, namely, conduct delivered against or toward at least two of the persons who testified against him.

App. 549. The judge also explained that the "evidence is before you for a limited purpose, very limited. That is, for the purpose of supporting the Commonwealth's contention that the actions of the defendant directed against [his niece] was in furtherance of a common scheme or design of the defendant's." App. 550. He added, "You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt." App. 550.

The jury convicted Allison on all three counts on April 17, 2008. He was sentenced to twelve and a half to twenty-five years of imprisonment. On April 19, 2009, Allison filed a direct appeal to the Pennsylvania Superior Court, arguing, inter alia, that

3

the sisters' prior bad acts testimony should not have been admitted. The bulk of Allison's brief regarding this argument focused on violation of Pennsylvania law, but he did mention the U.S. Constitution two times. First, the "Statement of Questions Involved" section of his brief described the prior bad acts issue as "WHETHER THE LOWER COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF PRIOR BAD ACTS AS WELL AS CROSS-EXAMINING WITNESSES IN VIOLATION OF THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS[.]" App. 614. Second, in the "Argument" section, Allison stated, "The Fourteenth Amendment of the United States and Pennsylvania Constitutions make it explicitly clear that: 'no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'" App. 631.

The Pennsylvania Superior Court denied Allison's claim, concluding that the trial court's admission of the sisters' testimony as proof of a common plan or scheme was not an abuse of discretion. Allison did not appeal to the Pennsylvania Supreme Court.

Allison then filed a pro se application in Blair County Court of Common Pleas, seeking relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, et seq. (hereinafter "PCRA"). The PCRA application alleged, inter alia, ineffective assistance of counsel, but did not contain claims regarding the prior bad acts testimony. The petition was denied, and Allison pursued unsuccessful appeals in the Pennsylvania Superior Court and the Pennsylvania Supreme Court.

4

Allison filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. The Magistrate Judge recommended denying the application, and the District Court adopted that recommendation in a judgment entered September 4, 2015. The Magistrate Judge's analysis concluded that an allegation of violations of state rules of evidence does not constitute colorable claim for a federal due process violation.[1] Allison filed a timely notice of appeal and we granted a certificate of appealability based on two issues on appeal: 1) whether Allison's federal due process rights were violated by the introduction of the 'prior bad acts' testimony of the two sisters and 2) whether Allison fairly presented his federal due process claim to the state courts.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Our review of the District Court's denial of habeas corpus is plenary, but we "review findings of fact for clear error." Gardner v. Grandolsky, 585 F.3d 786, 788 (3d Cir. 2009).

## III.

Federal habeas claims need to have been "fairly presented" to a state court. To fulfill that requirement, the federal claim "it must be the substantial equivalent" of the claim that the state courts reviewed either on direct appeal or collateral review. Lambert

---

[1] While the District Court and Magistrate Judge concluded that a number of Allison's grounds for relief were procedurally defaulted, they did not conclude that the claim at issue in this appeal was defaulted.

5

v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), as amended (Jan. 16, 1998). "Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989).[2] For example, a claim presented to the state court premised solely on violation of state evidentiary rules would not be the "substantial equivalent" of a claim of a federal constitutional violation based on the exact same facts. See Duncan v. Henry, 513 U.S. 364, 366 (1995).

A threshold issue is whether Allison fairly presented his federal due process claim based on the admission of the sisters' testimony. The Commonwealth does not appear to contest Allison's assertion that the factual predicates supporting his state claim and his federal claim are the same. Therefore, we only examine whether Allison has demonstrated that he "fairly presented" the legal theory of a federal constitutional violation when his direct appeal contained references to the "UNITED STATES . . . CONSTITUTION[]" and "[t]he Fourteenth Amendment of the United States . . . Constitution[]," and quoted the language of the amendment. App. 614, 631.

---

[2] Although Allison concedes that he did not raise these claims in his PCRA petition, he is deemed to have met the exhaustion requirement if he had properly raised the issue on direct appeal. Lambert, 134 F.3d at 513 ("A petitioner who has raised an issue on direct appeal, however, is not required to raise it again in a state post-conviction proceeding."); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Moreover, that Allison did not appeal the intermediate court's rejection of his direct appeal does not bar him from seeking relief now because the Pennsylvania Supreme Court has deemed that a state prisoner need not petition the Pennsylvania Supreme Court in order to exhaust his state court remedies. Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004) ("Consequently, petitioners need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'").

"If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan, 513 U.S. at 366. In Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001), this Court explored what it means to "say so." We examined whether the petitioner put the state court on notice that his challenges regarding the admission of evidence — including uncharged prior bad acts evidence — implicated federal law. We concluded that the petitioner did not "say so" merely by dint of "passing references to the concept of a 'fair trial' in his state court papers," and as a result his federal habeas claim was procedurally defaulted. Id. at 414.

Like Allison, the petitioner in Keller devoted pages of the brief to Pennsylvania state cases. However, unlike Allison, the petitioner in Keller never even mentioned the United States Constitution. Rather, the Keller petitioner only referred to his right to a "fair trial." Id. at 415. Allison, on the other hand, specifically invoked "the United States and Pennsylvania Constitutions" and cited the Fourteenth Amendment language regarding due process, and in the next sentence argued that the trial court denied his constitutional rights when it "deviat[ed] from applicable law and misappl[ied] the probative value and prejudicial effect of the prior bad acts." App. 631. Although Allison's discussion of his federal constitutional claim was short, and he did not cite any federal case law, he invoked the federal law when he cited the Fourteenth Amendment and linked the alleged the facts of his claim to it. Cf. Picard v. Connor, 404 U.S. 270, 278 (1971) ("[W]e do not imply that respondent could have raised the [federal constitutional] claim only by citing 'book and verse on the federal constitution.' We

7

simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." (quoting Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)).

Therefore, we conclude that — although this is a close call — Allison did "afford the state courts a chance to correct an alleged constitutional violation before invoking federal jurisdiction," Szuchon v. Lehman, 273 F.3d 299, 322 (3d Cir. 2001), when he directly referenced the Fourteenth Amendment and the United States Constitution in his pro se direct appeal.

IV.

We next turn to the merits of Allison's petition. He argues that the sisters' testimony imperiled the "fundamental fairness" of his right to a fair trial. Allison Br. 13, 16. He adds that the jury instruction regarding the testimony exacerbated the prejudice of the testimony. Allison Br. 22.

"The Antiterrorism and Effective Death Penalty Act (AEDPA) dictates the manner in which we conduct our review" of claims under 28 U.S.C. § 2254. Dennis v. Sec'y, Pa. Dep't of Corr., 834 F.3d 263, 280 (3d Cir. 2016). The road to relief under AEDPA is not an accommodating one. Unlike a direct appeal, in which a reviewing court can determine whether a district court erred in introducing certain evidence, relief under AEPDA is only available to Allison if he can show one of two things: that admission of the sisters' testimony was 1) "contrary to," or 2) "involved an unreasonable application of," "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014).

8

Clearly established law is defined as "holdings, as opposed to the dicta of this [Supreme] Court's decisions." White, 134 S. Ct. at 1702 (quoting Howes v. Fields, 132 S. Ct. 1181, 1187 (2012)). The admission of the testimony would be "contrary" to clearly established law if it applies "'a rule that contradicts the governing law set forth' by the Supreme Court or is inconsistent with a Supreme Court decision in a case involving 'materially indistinguishable' facts." Bronshtein v. Horn, 404 F.3d 700, 723 (3d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The admission would be an "unreasonable application" if "it is so obvious that a clearly established rule applies to [this] given set of facts that there could be no 'fairminded disagreement' on the question." White, 134 S. Ct. at 1706. In other words, "[h]abeas relief may not be granted on the basis that the state court applied clearly established law incorrectly; rather, the inquiry is 'whether the state court's application of clearly established federal law was objectively unreasonable.'" Dennis, 834 F.3d at 281 (quoting Williams, 529 U.S. at 409). Moreover, whether a rule is unreasonably applied "corresponds to the specificity of the rule itself: '[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).

## A.

The parties agree that the question of whether the trial court misapplied the Pennsylvania Rules of Evidence is not dispositive. Rather, the question is whether the admission of the sisters' testimony "in the context of the entire trial, w[as] sufficiently

9

prejudicial to violate [his] due process rights," Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974).

At the crux of Allison's case is his contention that the admission of prior bad acts evidence was "an error so egregious that the jury was unable to fairly weigh evidence" against him. Reply Br. 8. Allison, however, cannot identify clearly established Supreme Court precedent that such evidence constitutes a violation of due process. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("We express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

Moreover, the Federal Rules of Evidence expressly allows such testimony in sex crime cases. In fact, Federal Rules of Evidence 413 and 414 provide that when a criminal defendant is accused of child molestation or sexual assault, "the court may admit evidence that the defendant committed any other child molestation" or sexual assault, and "[t]he evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413, 414. No Court of Appeals which has considered the constitutionality of Fed. R. Evid. 413 or 414 has concluded that they violated due process, see United States v. Schaffer, 851 F.3d 166, 177 n.56 (2d Cir. 2017) (collecting cases across Courts of Appeal, all of which have held that Rule 413 or 414 do not violate the Due Process Clause), and the Supreme Court has not deemed either rule unconstitutional. Thus, Allison cannot successfully claim that admitting the prior bad acts evidence as propensity evidence is in itself "contrary to" or an improper application of clearly established federal law.

Allison argues that overly prejudicial testimony in violation of Rule 403 — which serves as "a limitation on the admissibility of character evidence" — can also amount to a violation of due process.[3] Nevertheless, Allison cannot overcome his burden of identifying facially contradictory Supreme Court precedent, or precedent that obviously forbids the admission of the sisters' testimony.

Allison cites to <u>Dowling v. United States,</u> 493 U.S. 342, 352 (1990) to argue that some evidence can be so prejudicial that it violates the "fundamental conceptions of fairness." We agree that this general rule regarding prejudicial evidence and fundamental fairness exists. We next turn to whether the trial court's decision to admit the sisters' testimony was an "objectively unreasonable" application of this general rule. <u>Williams,</u> 529 U.S. at 409. We conclude that it was not.

In <u>Dowling</u>, evidence that the defendant had donned a mask and used a gun to rob a home was admitted to show that he wore a similar mask and used a similar gun to rob a bank two weeks later. In assessing Dowling's claim, the Supreme Court evaluated whether the admission of a prior bad act was substantively more prejudicial than probative. There, the Court noted that it "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly" and <u>upheld</u> the trial court's decision to admit the evidence of the prior robbery because it was "at least circumstantially valuable

---

[3] There is a slight difference between the Pennsylvania Rules of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," and Federal Rule of Evidence 403, which provides that relevant evidence may be excluded if it is <u>substantially</u> outweighed.

11

in proving petitioner's guilt." Dowling, 493 U.S. at 353. The Dowling Court did not evaluate the specific probative and prejudicial elements of the equation, and thus did not set a rule directly applicable to the facts of Allison's case.

To the extent that Dowling evokes the general principle that evidence or statements at trial could be so "prejudicial to violate [the defendant's] due process rights," Donnelly, 416 U.S. at 639, Allison also has not demonstrated how such a general rule could yield the conclusion that the trial court's balancing of the probativeness of the testimony and its potential prejudice was "objectively unreasonable" based on Supreme Court precedent, Williams, 529 U.S. at 409, especially given how "narrow" the category of potential fundamental fairness infractions are, Dowling, 492 U.S. at 353.[4]

_____

[4] The state trial court's decision remarked on the reasons that the sisters' testimony in this case is probative, identifying what it characterized as important similarities between the three rapes. App. 44-47. Allison's argument that the lack of other corroborating evidence made the sisters' testimony even more prejudicial, Allison Br. 26, gets the logic backwards. The lack of other evidence makes their testimony more probative because its value in the case is higher. The lack of other evidence does not make any particular piece of evidence more inflammatory.

The state trial court also concluded that while the "admission of this prior bad acts evidence will be prejudicial . . . it is not unduly prejudicial." App. 48. Allison obviously disagrees, but fails to elicit a constitutional rule to the contrary. While the testimony was indeed of an extremely disturbing nature, so, too, were the allegations directly before the jury. The record does not show how the conduct described by the sisters was any more inflammatory than the conduct Allison was accused of at trial. See Schaffer, 851 F.3d 166, 183 (holding that video footage of the defendant assaulting young girls was not more inflammatory than the allegations at issue—involving him assaulting a young girl in a similar manner); see also United States v. Gougis, 432 F.3d 735, 743 (7th Cir. 2005) (holding that evidence of the defendant's prior theft "was indeed prejudicial to Brown's defense, but the vast majority of the government's evidence against a defendant is prejudicial to him. That's the idea." (internal citations, quotation marks, and alterations omitted)). In the absence of contrary Supreme Court precedent that would yield the trial court's conclusions objectively unreasonable, Allison cannot prevail.

12

Allison cites several other cases that are inapposite to his case. For example, in Chambers v. Mississippi, 410 U.S. 284, 300-04 (1973), the issue was whether the trial court's exclusion of certain testimony based on hearsay and adverse witness grounds deprived the defendant of his Sixth Amendment Confrontation Clause rights. That rule of constitutional law has nothing to do with Allison's case. Similarly, the Supreme Court's holding in Huddleston v. United States, 485 U.S. 681, 688-69 (1988), was not on the question of whether admission of prior bad acts was unduly prejudicial and violated a defendant's constitutional rights. Rather, the Court held that a district court does not need to make a preliminary finding regarding the proof behind a prior bad act pursuant to Fed. R. Evid. 104. Id. In Michelson v. United States, 335 U.S. 469 (1948), although the Court discussed the merits of common law rules excluding propensity evidence, it never stated that admission thereof amounts to a constitutional violation. Indeed, the central issue in Michelson was not whether prior bad acts evidence when admitted as propensity evidence would be a constitutional violation, but rather the propriety of reputational character evidence. In any event, the Court affirmed the conviction despite acknowledging shortcomings in the character evidence admission scheme that courts use. In Estelle, in which a father was found guilty of killing his infant child, the Court upheld admission of evidence that the child's prior injuries were a result of earlier abuse, noting that such evidence is probative and "demonstrated [her] death was the result of an intentional act by someone, and not an accident." 502 U.S. at 69. It is not "so obvious" that these precedents apply to Allison's case, and declining to apply them here was not "objectively unreasonable." White, 134 S. Ct. at 1702.

13

Because the admission of the sisters' testimony was neither contrary to nor involved an unreasonable application of clearly established Supreme Court precedent, the District Court's denial of Allison's petition on this basis was proper.[5]

2.

Allison also argues that jury instructions prejudiced his constitutional rights, specifically taking issue with the trial court's language "You've heard some evidence tending to prove that the defendant was guilty of some improper conduct for which he is not on trial now . . . [namely] conduct delivered against or toward at least two of the persons" who testified against him. App. 549. Allison argues that this suggested he was guilty of the acts the sisters described (and possibly more) and "reinforced and underscored the prior bad acts testimony." Allison Br. 24.

To the extent that Allison asserts that the instruction "tending to prove that the defendant was guilty" usurps the jury's role in determining whether Allison did in fact molest his sisters, or that it suggests Allison had assaulted additional children, that standalone argument is foreclosed for failure to exhaust state remedies. Nowhere in

---

[5] Allison cites to three of our decisions: Bronshtein, 404 F.3d 700, Lesko, 881 F.2d 44, and Government of the Virgin Islands v. Pinney, 967 F.2d 912 (3d Cir. 1992). These decisions are not dispositive because AEDPA does not allow a petitioner to rest on circuit precedent. Moreover, only the Pinney decision bears resemblance to Allison's specific substantive position in this case. Nevertheless, it is also unhelpful to Allison because the Court — reviewing a conviction on direct appeal — merely held that the admission of testimony regarding a prior sexual assault was improper "common plan or scheme" evidence under the Federal Rules of Evidence. It did not reach the issue of whether such evidence would violate the defendant's due process rights under the Constitution. Allison also cites to a number of cases involving the First Amendment, Reply Br. 5, which are even less relevant.

14

Allison's direct appeal (or, indeed, his federal habeas petition) is there any reference to either the factual predicates or the legal theory associated with such an argument.

Allison might also be arguing that the jury instruction is not only defective for the above reason alone, but also that it "further prejudice[ed]" him by emphasizing the bad act and therefore aggravated the prejudicial nature of the testimony. Allison Br. 24. This argument is unpersuasive because the language of the instruction does not aggravate any prejudicial aspect of the testimony. It does not even refer to the details of the testimony. The instruction only noted that the testimony existed and that the jury ought to use it for a limited purpose. Because Allison has not demonstrated a violation of or unreasonable application of clearly established law with respect to the jury instructions, his petition fails on that basis as well.

V.

For the reasons stated above, we will affirm the judgment of the District Court.